## Neumoyer *et al. versus* Andreas.

1. The Act of 21st March 1772 (Landlord and Tenant) gives no appeal from proceedings before the justices and inquest.

2. When upon a claim by the tenant that he has title acquired after the lease, the proceedings before the justice and inquest are arrested, it is a suspension of the proceedings there, and when the case comes into court it is not to try the questions committed by the act to the justices, &c., but that of title to the reversion acquired after the demise: the *onus* is on the tenant.

3. Proceedings were commenced by a landlord before two justices, &c.: the inquest found for the tenant. The landlord again commenced proceedings, which were moved into court by the affidavit of the tenants of title acquired after the lease; evidence of the former proceedings and of a settlement and license to continue to dig ore was not admissible on the trial in court.

March 17th 1868. Before STRONG, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius. READ, J., absent.

Error to the Court of Common Pleas of *Lehigh county:* No. 143, to January Term 1868.

This case came into the Court of Common Pleas by *appeal* (so called) from the proceedings before two justices of the peace, under the Act of March 21st 1772 (1 Sm. L. 373, Purd. 613), commenced by Gideon Andreas against George Neumoyer and Conrad Seem.

On the 23d of February 1864, the plaintiff made complaint before two justices of the peace, that being seised and possessed of a messuage and tract of land, &c., containing 17 acres, on the 25th of December 1853, he leased them to the defendants by parol for ten years, for the purpose of mining, &c., iron-ore, they paying 25 cents per ton for the ore mined; that on the 2d day of October last past, he gave notice to the defendants to quit within three months, and asked for such proceedings by the justice as are directed by law, &c.

At the hearing before the justices, and inquest on the 8th of June 1864, the defendants filed an affidavit alleging that the title and right to the possession of the land in question are claimed by them under a contract with the plaintiff, made after the date of the lease mentioned in the plaintiff's complaint,—setting out the lease, &c., and thereupon asked that the proceedings before the justices should be arrested and certified to the Court of Common Pleas. On the same day they entered into recognisance to the plaintiff to prosecute their claim, &c.

On the trial in the Common Pleas, before Jones, P. J., the plaintiff gave in evidence his title to the premises; notice to defendants to quit, with proof of service. The defendants having admitted that they were in possession of the premises on the 13th of February 1864, the plaintiff rested.

The defendants then offered the record of proceedings com-

[Neumoyer v. Andreas.]

menced January 15th 1864, by the plaintiff against the defendants, before two other justices, to recover possession of the same premises under the same lease; in which proceedings the inquest found, that "the evidence submitted to them does not sustain the matters of fact in said complaint set forth, and that they therefore find against the claim of the said Gideon Andreas, to have possession of the premises in said complaint mentioned and claimed by him."

"Whereupon it is considered by the said justices, that the said Gideon Andreas do not recover possession of the said premises."

The evidence was offered to show that the same question as that then trying, had been determined in a former proceeding. The court admitted the offer, reserving the effect of it.

The defendants gave evidence by F. T. Jobst, Charles Snider, John Weaver and Peter Guetter, of facts to show that after the first proceedings, it was agreed between the plaintiff and defendants that they should go on and dig ore. This evidence was received under objection by the plaintiff.

The defendants then offered to prove, " that after the original contract made between the plaintiff and defendants, in the year 1853, as is set forth in the complaint of Gideon Andreas, that a contract was entered into between the plaintiff and defendants in the year 1855, to the effect that if the defendants would sink a well, plank it, and put in an iron pump and put up an engine to pump out the water, the defendants should be entitled to dig all the ore that could be found on the land of the plaintiff, described in the complaint, and should pay him 25 cents for each ton so dug, and that in pursuance of this contract the defendants remained in possession of the premises, sunk one or more wells, planked the same, and put a cast-iron pump therein, and erected an engine to pump the water, and dug ore upon the land up to the time of bringing this suit, for which they paid him semi-annually at the rate of 25 cents and upwards for each ton of ore so dug by them.

"This offer to be followed with proof that the plaintiff has accepted, since this proceeding was commenced, two semi-annual payments for ore dug since this proceeding was commenced, and that the defendants have since that time tendered him semi-annually the amounts due for ore dug by them, which he has refused to receive."

The plaintiff objected to the offer; it was rejected, and a bill of exceptions sealed. The court also ruled out the testimony of the witnesses for defendant.

The defendants requested the court to charge:—

"That the decision made by the justices and jury in the former proceeding was final and conclusive between the parties, and the verdict must therefore be for the defendants."

[*Neumoyer v. Andreas.*]

To which the court answered:—

"We cannot give this instruction.    There being no evidence for the defendants before you, we think your verdict should be for the plaintiff, and instruct you accordingly."

The verdict was for the plaintiff.

The defendants took a writ of error; and assigned for error: 1. The rejection of their offer of evidence; 2. Striking out the testimony of the defendants' witnesses, and 3. The charge of the court.

*C. M. Runk* and *E. J. Fox* (with whom was *F. A. Baldwin*), for plaintiffs in error.—As to 1st error, cited Caldwell *v.* Fulton, 7 Casey 476; Johnstown Iron Co. *v.* Cambria Iron Co., 8 Id. 246; Moore *v.* Small, 7 Harris 467; 1 Story's Eq. §§ 759, 761, 763; Debozear *v.* Basler, 2 Grant 422; Young *v.* Glendenning, 6 Watts 509; Steel *v.* Thompson, 3 Penna. R. 38; Act of 1772, *supra;* McGee *v.* Fessler, 1 Barr 131; Clement *v.* Youngman, 4 Wright 345; Chetham *v.* Williamson, 4 East 469; Co. Litt. 46; Caldwell *v.* Copeland, 1 Wright 431; Armstrong *v.* Caldwell, 3 P. F. Smith 284; Funk *v.* Haldeman, Id. 229; Lefevre *v.* Lefevre, 4 S. & R. 241; Rerick *v.* Kern, 14 Id. 271; Wood *v.* Ledbitter, 13 M. & W. 840 and cases in note; McKellip *v.* McIlhenny, 4 Watts 317; Swartz *v.* Swartz, 4 Barr 353; Huff *v.* McCauley, 3 P. F. Smith 206; Blashford *v.* Duncan, 2 S. & R. 480; Hohly *v.* German Reformed Society, 2 Barr 293; Shaffer *v.* Sutton, 5 Binn. 230; Taylor's Land. and Ten., § 369; 2 Bl. Com. 41; Gilbert on Rents 20; 2 Washb. Real Prop. 9; Turner *v.* Reynolds, 11 Harris 206; Essler *v.* Johnson, 1 Casey 350.

On the 2d assignment: 4 Kent's Com. 112.

On the 3d assignment they cited Ayres *v.* Novinger, 8 Barr 414; Marsh *v.* Pier, 4 Rawle 273; Mann *v.* Drexel, 2 Barr 210; Souter *v.* Baymore, 7 Id. 417, and the cases there cited; Fahnestock *v.* Faustenauer, 5 S. & R. 174; Blashford *v.* Duncan, 2 Id. 480.

*J. D. Stiles* and *S. A. Bridges* (with whom was *G. B. Schall*), for defendant in error, cited Act of 1772, *supra.*

On 1st assignment: Newell *v.* Gibbs, 1 W. & S. 496; Cunningham *v.* Gardner, 4 Id. 126; Debozear *v.* Butler, 2 Grant 417; Greenlee *v.* Greenlee, 10 Harris 227; Brawdy *v.* Brawdy, 7 Barr 157; Christy *v.* Barnhart, 2 Harris 262; Moore *v.* Small, 7 Id. 461; Poorman *v.* Kilgore, 2 Casey 365; Postlethwait *v.* Frease, 7 Id. 472; McKowen *v.* McDonald, 7 Wright 441; McClure *v.* McClure, 1 Barr 378; Clark *v.* Everly, 8 W. & S. 232; Moon *v.* Miller, 8 Barr 283; Co. Litt. 45; Bac. Abr. *Lease*, K.

The opinion of the court was delivered, March 27th 1868, by Agnew, J.—It is necessary to lay out of the cause several of

[Neumoyer v. Andreas.]

the questions presented, by stating the true position of the case before us. This is not an appeal from the decision of the justices and jury in the landlord and tenant proceeding before them under the Act of 21st March 1772. That act gives no appeal. It came into the Court of Common Pleas upon a recognisance taken before the justices under the 13th section of the act, which remitted the tenants to that court to prosecute their claim of title acquired after the commencement of the lease and set up in their affidavit to arrest the proceedings of the justices and jury. On this being done, the act proceeds to say that the justices shall *forbear* to give their judgment. It then provides that if the person setting up this after-acquired title, shall fail to prosecute his claim, the recognisance shall be forfeited to the landlord, and the justices shall *proceed to give judgment* and cause the premises to be delivered to the landlord. As remarked by Gibson, C. J., in Steele v. Thompson, 3 Penna. R. 37, this is a *suspension* of the proceedings before the justices and freeholders, in order to have the judgment of the Court of Common Pleas on the question whether the landlord has not parted with his reversionary right, *since* the demise. It is evident, therefore, that when the case came into the Common Pleas, it was not to try the questions committed by the act to the decision of the justices and freeholders, but that of title to the reversion acquired after the demise. The *onus*, as remarked by Rogers, J., in Newell v. Gibbs, 1 W. & S. 500, is thrown on the tenant. It is the trial of a collateral fact : per Gibson, C. J., Clark v. Everly, 8 W. & S. 232. This being the attitude of the case in the Common Pleas, it is obvious that the plea of a former finding of two justices and a jury of freeholders, as well as the alleged settlement and continuance of the lease, were defences that belonged to the *forum* of the justices and jury and not to that of the Common Pleas. Indeed, according to the opinion of Tilghman, C. J., a finding by the jury for the tenant has no effect upon a subsequent proceeding. He says in such case no record is directed to be made and consequently no judgment is given for the tenant, nor can he in any subsequent proceedings avail himself of the opinion of the jury : Galbraith v. Black, 4 S. & R. 212. Without now deciding upon the effect of a finding by the freeholders for the tenant, it is sufficient to say that the plea of a former finding was out of place in the proceeding before the Court of Common Pleas.

But it is contended, under the doctrine of Steel v. Thompson, *supra*, that there was no jurisdiction in the justices and freeholders, for the want of a lease, such as would confer it under the Act of 1772, and therefore that judgment in the Common Pleas should have been for the tenant. This argument is founded upon the rejected offer referred to in the 1st assignment of error, but overlooks its terms. The offer was to prove that *after* the

7 P. F. Smith—29

original contract made between the plaintiff and defendant in the year 1853, as it is set forth in the complaint of the plaintiff, a contract was entered into between the plaintiff and defendant in the year 1855, to the effect, &c.   Thus the offer was not to show that the *original* contract upon which the plaintiff grounded his proceeding before the justices was not such a lease as to give them jurisdiction, but that the subsequent contract vested a different estate in the defendant from that which he had under the original lease.   It is not denied that the original lease set forth in the complaint, to wit, for ten years at a rent of twenty-five cents per ton for all the iron-ore mined and taken away, came within the terms of the Act of 1772.   The doctrine of Steel *v.* Thompson is therefore not applicable, and we are now brought to consider the error assigned upon the rejection of the offer already referred to, in its only proper aspect as proof of a title to the reversion acquired after the inception of the lease.   The offer was to prove a contract " to the effect that if the defendants would sink a well, plank it and put in an iron pump, and put up an· engine to pump out the water, the defendants should be entitled to dig all the ore that could be found on the land of the plaintiff described in the complaint, and should pay him twenty-five cents for each ton so dug, and that in pursuance of this contract the defendants remained in possession of the premises, sunk one or more wells, planked the same, and put a cast-iron pump therein, and erected an engine to pump the water, and dug ore upon the land up to the time of bringing this suit, for which they paid him semi-annually at the rate of 25 cents and upwards for each ton of ore so dug by them."   The court rightly rejected this offer for several reasons.   The lease set forth in the complaint before the justices was for a piece or parcel of land containing 17 acres, more or less.   The claim made by the tenant, which he was remitted to the Court of Common Pleas to prosecute, was for an alleged title or right of possession acquired by contract to the demised premises.

But the offer made in the court below was to show only a title " to dig all the ore that could be found on the land of the plaintiff."   Now whether this constituted a title to the ore in place, or a license to dig it, it was no answer to the landlord's right to repossess the demised premises.   If it be a title to the ore, it was. no reason why the landlord should not be restored to the possession of the surface of the land and to the use of all the other minerals, of timber and other rights of property which did not pass by the ore contract.   If it were a contract for the ore itself and conferred a corporeal estate in it, the contract was by parol, and there was no offer to prove a possession, delivered in pursuance of the new contract.   The only offer was to show that the defendant *remained* in possession, sunk one or more wells, &c.

[Neumoyer v. Andreas.]

The case, therefore, fell within the Statute of Frauds and Perjuries; while the labor and materials expended in the improvements were easily capable of compensation.

But we are of opinion that the contract set forth in the offer amounted to no more than the evidence of a license to dig ore, and not of a title to the ore in place. It falls not within the principle of Caldwell v. Fulton, 7 Casey 475, but rather within the decisions in The Johnstown Iron Co. v. The Cambria Iron Co., 8 Casey 241, and Clement and Masser v. Youngman & Walter, 4 Wright 341. It resembles Caldwell v. Fulton in this, that the right to dig ore extends to all the ore upon the land; but it differs from it in the fact that no consideration passed to support a present conveyance of all the ore. That was a formal conveyance for a present consideration, this is a mere contract for the ore at 25 cents for each ton which might be dug. The well, pump and engine were but the means to be used in reaching and lifting the ore. If the title to the ore itself passed, then the plaintiff must be deemed to have parted with it for ever without compensation, until it should suit the defendant to dig and pay for it. Having no express covenant compelling the defendants to dig a certain quantity or to mine it within a given time, the plaintiff has no adequate means of enforcing compensation, and no measure to fix its amount. It is unlike the case of Watson v. O'Hern, 6 Watts 362, which was a lease for a certain term of years with express covenants that fully implied a covenant to work the quarry, and a standard of product, which insured to the landlord an amount of rent, at least to the extent of the tenant's business, and the contracts for stone which the landlord might make. But here, when shall the defendants take out ore, how much shall they mine? The whole is left in a dubious and uncertain state, and therefore incompatible with the idea of a present conveyance; and being made by parol cannot be looked upon as more than a license, without doing injustice and manifest violence to the intention of the parties. This conclusion is supported by the cases referred to in 8 Casey 241 and 4 Wright 341. See also Funk v. Haldeman, 3 P. F. Smith 229. Then, as a license, it would confer no right to the possession of the land described in the landlord's complaint; but a mere right to enter and dig for ore, with such a qualified possession as would enable the defendants to prosecute their digging and taking away the ore; and would, therefore, be no barrier to the plaintiff's recovery of the possession generally after the expiration of the lease; leaving the plaintiff liable for any improper exercise of his right of possession which might interfere with any valid contract he may have made for a license to dig the ore on the land.

Judgment affirmed.