St. Louis Union Trust Company, as Executor of Will of Blanche L. McChesney, v. Herbert Dils Little, Sallie Hamilton McCormick, St. Louis Children's Hospital, Anna Chandler, Marie Chandler, Harry Moffett McChesney, Elizabeth McChesney Bradford, Ruth Little Palmer, Home of Friendless, Trustees of First Church of Christ Scientist in St. Louis, Walter F. Cole, Mattie Caruth McMillan, Frances Collins, Nance Brengle and First Church of Christ Scientist; Herbert Dils Little, Appellant.—10 S. W. (2d) 47.

and

St. Louis Union Trust Company, as Executor of Will of Blanche L. McChesney, v. Anna Chandler, Marie Chandler, Sallie Hamilton McCormick, Herbert Dils Little, St. Louis Children's Hospital, Harry Moffett McChesney, Elizabeth McChesney Bradford, Ruth Little Palmer, Home of Friendless, Trustees of First Church of Christ Scientist in St. Louis, Walter F. Cole, Mattie Caruth McMillan, Frances Collins, Nance Brengle and First Church of Christ Scientist; Anna Chandler and Marie Chandler, Appellants.—10 S. W. (2d) 47.

Division One, July 30, 1928.

1060

*Nagel & Kirby* and *E. P. Griffin* for Herbert Dils Little, appellant.

1062

*Leahy, Saunders & Walther* for Anna Chandler and Marie Chandler, appellants.

*Taylor, Chasnoff & Wilson* for respondents, Frances Collins and Harry Moffett McChesney.

*Charles P. Williams* for respondent, Nance Brengle.

*Eliot, Blayney & Bedal* for St. Louis Children's Hospital, *Lewis & Rice* for Home of Friendless, and *Harold S. Cook* for Mattie Caruth McMillan.

ATWOOD, P. J.—The above two appeals were taken and perfected in the same case, but were argued, briefed and submitted as one appeal. They arose out of a suit instituted by the St. Louis Union Trust Company, as executor· of the will of Blanche L. McChesney, deceased, to construe the same.

Blanche L. McChesney died a resident of the city of St. Louis on February 21, 1923, leaving a last will and testament dated March 20, 1918, and a codicil thereto dated February 10, 1920. Both will and codicil were admitted to probate in the Probate Court of the City of St. Louis, Missouri, on February 24, 1923. With exception of the signatures of the attesting witnesses, they were wholly· in the handwriting of the deceased, and, omitting attesting clauses and signatures of witnesses, they are as follows:

"Being at the present time in good health and·of sound and disposing mind and memory, but mindful of death, I, Blanche L. McChesney, of the City of St. Louis, State of Missouri, do make and publish and declare this as my last will and testament, hereby revoking all former wills and codicils by me heretofore made.

"First. I direct that all my just debts, including my funeral expenses and the expenses of my last illness, be paid by·my executor out of my estate as early as may be.

"Second. I direct my executor to pay to Bellefontaine Cemetery Assn. a sum sufficient to endow my family lot for perpetual care.

"Third. I give and bequeath unto my husband's niece, Sallie Hamilton McCormick, of Steele's Tavern, Va., ten thousand dollars.

"Fourth. I give and bequeath unto my half ·brother, Herbert Dils Little, of Parkersburg, West Va., five ·thousand dollars.

"Fifth. I give and bequeath unto the St. Louis Children's Hospital ten thousand dollars.

"Sixth. I give and bequeath unto my husband's cousins, Anna Chandler and Marie Chandler, the sum of five thousand dollars each.

"Seventh. I give and bequeath to my husband's nephew, Harry Moffett McChesney, of Mexico City, Mexico, the sum of five thousand dollars and my husband's old watch.

"Eighth. I give and bequeath unto Elizabeth McChesney Bradford of Charleston, W. Va., the sum of one dollar.

"Ninth. I give and bequeath unto my cousin, Ruth Little Palmer, of Cumberland, Md., the sum of five thousand dollars. Also my books and pictures.

"Tenth. I give and bequeath unto the Home of the Friendless the sum of ten thousand dollars.

"Eleventh. I give and bequeath to the First Church of Christ, Scientist, Kingshighway, St. Louis, Mo., the sum of fifteen thousand dollars.

"Twelfth. I give and bequeath unto Walter F. Cole of West Orange, New Jersey, my husband's jewelry, including his new watch, star sapphire ring and scarf pin.

"Thirteenth. I give and bequeath unto Mattie Caruth McMillan of St. Louis, Mo., the sum of five thousand dollars, to be spent on the welfare of poor, homeless children. Also my three-stone diamond ring and platinum watch.

"Fourteenth. I give and bequeath unto Frances Collins of 50 Portland Place my square diamond ring, which is set with a circle of emeralds.

"Fifteenth. I give and bequeath unto my friend, Nance Brengle. of Cumberland, Maryland, my opal ring, now in her possession; also my solitaire diamond ring.

"Sixteenth. I give and bequeath unto my cousin, Ruth Little Palmer, of Cumberland, Maryland, my furniture and small silver; also rugs.

"Seventeenth. I give and bequeath unto my husband's niece Sallie Hamilton McCormick, of Steele's Tavern, Va., my silver tea and coffee service.

"All the rest and residue of my estate of whatsoever nature and wheresoever situated I wished divided among the above heirs.

"I hereby nominate and appoint the St. Louis Union Trust Company, a Missouri corporation, executor of this, my last will and testament.

"In Witness Whereof, I have hereunto subscribed my name at the City of St. Louis, Missouri, this twentieth day of March, nineteen hundred and eighteen.

"BLANCHE L. McCHESNEY.

"I Blanche L. McChesney, make this as a codicil to my above will of March, 1918:

"I give to Frances Collins my bar diamond pin.

"In all other respects I ratify and confirm all the provisions of my will of March, 1918.

"Witness my hand and seal this 10th day of February, 1920.

"BLANCHE L. McCHESNEY."

Defendants Elizabeth McChesney Bradford, Walter F. Cole and Ruth Little Palmer, a minor, were duly served, but failed to answer or plead within the time required by law, and a default was granted. The other defendants filed answers setting forth their respective

views and contentions as to the meaning of the will. The sole contention made in the answer of Herbert Dils Little, one of the appellants herein, was "that the word 'heirs' as used by said testatrix in the seventeenth clause of said will was there used by her in its technical sense as meaning those of the persons above named in her said will, who were blood relatives of said testatrix, and who would have inherited from her under the laws of the State of Missouri had she died intestate." The only contentions made in the joint answer filed by Anna Chandler and Marie Chandler, the other appellants herein, were that the legacy of $5000 bequeathed in the thirteenth clause of said will to defendant Mattie Caruth McMillan to be spent on the welfare of poor homeless children is too indefinite to be a valid bequest; and that the word "heirs" as used in the residuary clause of said will "was not used by the testatrix in its technical sense, but that by the reasonable construction of said residuary clause in the will it was the intention of the testatrix to bequeath the residuum of her estate to the legatees in the will to whom specific cash legacies are bequeathed, other than the charitable or eleemosynary institutions, in the proportions that each of the said specific cash legacies bears to the total amount of such legacies, and excepting from participation in the residuum of said estate Elizabeth McChesney Bradford of Charleston, West Virginia, who is bequeathed the sum of one dollar, it being plainly the intention of the testatrix to exclude the said Elizabeth McChesney Bradford from sharing in the residuum of her estate." A stipulation was filed, in which all appellants except Herbert Dils Little joined, stating that "the only questions as to which there is any doubt or uncertainty as to the construction of said will are as to the distribution of the residuary estate, and as to whether the legacy of five thousand dollars to defendant Mattie Caruth McMillan 'to be spent on the welfare of poor homeless children' is a valid bequest."

The evidence principally consisted of formal proofs.

The decree of the chancellor, among other things, found "that the legacy of five thousand dollars bequeathed in the thirteenth clause of said will to defendant Mattie Caruth McMillan, to be spent on the welfare of poor, homeless children, is not indefinite or uncertain, but is in all respects a valid legacy or bequest for charitable purposes and that it should be treated as such by said executor." As to the residuary clause in the will of testatrix the decree further found "that the clause in said will whereby she disposes of her residuary estate of whatsoever nature and wheresoever situated I wish divided among 'the above heirs,' is a valid and enforceable disposition of her residuary estate and that the words 'the above heirs' were not intended by her in their narrow or strictly legal mean-

ing, but that by this expression she intended to designate as her heirs all of the persons mentioned as legatees in her said will and codicil, with the exception, however, that she did not thereby intend that the Bellefontaine Cemetery Association, to which an indefinite sum was bequeathed for the purpose of endowing for perpetual care of her lot in said cemetery, should be included in the expression, 'the above heirs,' and, therefore, the court finds that said Bellefontaine Cemetery Association is not intended to and should not share in said residuary estate.''

Appellants do not contend that the Bellefontaine Cemetery Association should share in the residuary estate. Testatrix by the second provision of her will *directed* the executor ''to pay to Bellefontaine Cemetery Assn. a sum sufficient to endow my family lot for perpetual care.'' This payment was obviously not to be in the nature of a bequest, but in satisfaction of a service to be rendered. The recipient would in no sense be a legatee under the will and the chancellor properly held that it should not participate in the residuum of the estate.

Appellant Herbert Dils Little complains of the exclusion of certain evidence offered in his behalf. He undertook to show by the deposition of Mrs. Mary T. Kaime that she took supper with Blanche L. McChesney at the Buckingham Hotel in St. Louis, Missouri, in the fall of 1919, and on that occasion Mrs. McChesney speaking of Herbert Dils Little said: ''I haven't very much, but what I have I want Herbert to have the most of.'' This was subsequent to the execution of the will containing the alleged ambiguity, and the codicil thereafter executed contained no alleged ambiguity and in no way referred to Herbert Dils Little. This part of the deposition was properly objected to and excluded as irrelevant and incompetent. [Lehnhoff v. Theine, 184 Mo. 346; State ex rel. v. McVeigh, 181 Mo. App. 566, l. c. 582.] Furthermore, a specific change of disposition made by a codicil negatives an intention to make any other change in the will. [2 Schouler on Wills (6 Ed.) 1044.]

This appellant also offered in evidence a letter written by testatrix in November, 1922, to his wife, for the purpose of showing the friendly feeling of testatrix toward him. This letter was written long after both the will and the codicil were executed, and on the authorities above cited it was properly excluded.

When asked from whom Mrs. McChesney inherited or obtained her property, or a large part of it, this same witness said: ''Well, now, I can only answer that this way, and this is from hearsay, that she got part of it from her father,'' etc. This was clearly hearsay evidence, and on objection made it was properly excluded on that ground.

Counsel for this appellant also contend that the skeleton form of will, Defendant's Exhibit No. 1, found among the papers of the

deceased, was admissible as throwing light on certain legal phrases contained in the will. Counsel for appellant not only failed to mention this point in the motion for a new trial, but during the trial when this proffered evidence was excluded, counsel said, "I am not going to save an exception." Hence, the point is not properly before us·for consideration.

Appellants Anna Chandler and Marie ·Chandler insist that the legacy of $5000 to Mattie Caruth McMillan, directed in the thirteenth item of her will "to be spent on the welfare of poor, homeless chil-, dren," is too vague and uncertain to constitute a valid gift for a charitable use. They say, therefore, that this legacy is void and the $5000 so bequeathed should become a part of the residuary estate and be distributed as such. Decisions from a number of other states are cited in support of this view, but they are confusing rather than helpful because of the wide range of legislation and judicial interpretation of the doctrine of charitable uses in other jurisdictions. On this very point we said in the early case of Chambers v. City of St. Louis, 29 Mo. 543, l. c. 582:

"As there are some states in which the statute of 43 Elizabeth, respecting charitable uses, has been repealed, we do not consider that the opinions of the courts of those states, nor of other courts on the subject of the law of charities prevailing in them, should have any great influence in our judgment in relation to this matter."

Missouri decisions are cited pro and con on the above proposition. Appellants cite five, but apparently none of them militate against the validity of this trust. For instance, in Jones v. Patterson, 271 Mo. 1; it was held that a bequest for missionary purposes was void inasmuch as it could not be determined what class of persons was intended to be benefited.

Also, in Board of Trustees v. May, 201 Mo. 360, the will gave the remainder to "the Methodist Episcopal Church South and missionary cause." This bequest was held void for indefiniteness, because it was impossible to tell from the language of the will what church or what missionary cause was meant, although the opinion intimates that if the will had said "to the Methodist Episcopal Church South for missionary cause," the bequest would have been valid.

Again, in the case of Hadley v. Forsee, 203 Mo. 418, the residue of testator's estate was given "to advance the cause of religion, and promote the cause of charity, in such manner as my dearly beloved wife may think will be best conducive to carrying out of my wishes." The bequest was held void because it was impossible to determine what religion or charity the testator meant, as he did not indicate it in his will and his wife was then dead. However, this opinion does hold that uncertainty as to the individuals whom a benefit may

reach does not defeat a charitable gift, but in fact is one of the features distinguishing a public from a private charity.

In Schmucker's Estate v. Reel, 61 Mo. 592, the testator provided a bequest to a person named "to be applied to a specific purpose which I have explained to him" and "for another and specific charitable purpose which he well understands." In order to understand the desire of the testator it was necessary to admit extrinsic evidence to identify the beneficiaries of the trust. The court held these bequests void not only on the ground of indefiniteness, but also because the extrinsic evidence admitted showed that the wishes of the testator were prohibited by the Constitution of Missouri.

National Board v. Fry, 293 Mo. 399, is also not in point. It involved a will giving an absolute devise to A with a proviso that he might convert the same into money and use it for certain charitable purposes. It was held that no question of the validity of a charitable trust was involved, since the devise did not undertake to create a trust, but was absolute in its terms.

While the foregoing Missouri decisions do not, in our opinion, sustain appellants' contention, yet there are decisions in this State which clearly uphold the validity of the trust in question. In Chambers v. City of St. Louis, 29 Mo. 543, an attack was made upon a bequest in the will of Bryan Mullanphy given to trustees "to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way, bona-fide, to settle in the west." In sustaining this bequest as a valid charitable use this court said (l. c. 589):

"As the general object of the charity was specific and certain, and not contrary to any positive rule of law, with a competent trustee to execute the charity designated, we do not see on what ground this objection can rest. If, under such circumstances, the uncertainty of the persons to be relieved by a charitable fund could be available to destroy it, few charities could be sustained. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law for charitable uses different from that which governs all other trusts. . . . From the very nature of the subject, charitable gifts must be objects vague and uncertain. The subjects of the charity may be numerous, and they are to be sought for and ascertained by those to whose discretion and judgment the dispensation of the relief is entrusted. The founder of a charity, by placing his fund in the hand of a competent trustee, designating the general object of the trust, with power to carry that object into effect, makes the trustee his substitute or delegate."

The rule above stated has ever since been followed in this State. In Howe v. Wilson's Executor, 91 Mo. 45, l. c. 48, the following will provision, much more uncertain than that involved in the instant case, was upheld:

"If there should be a remainder, after such sums are provided for after the death of my said wife, I direct said Wilson to divide said remainder among such charitable institutions of the city of St. Louis, Missouri, as he shall deem worthy."

The latter case was approved by this court in Powell v. Hatch, 100 Mo. 592, where a charitable gift was upheld though made "to such charitable purposes as my said trustee may deem best." Also the following provision was upheld in case of Barkley v. Donnelly, 112 Mo. 561, l. c. 565:

"I give and devise to the City of Kansas the parcel of land  .  .  . containing from five to ten acres  .  .  . called the 'Fry Place,' to hold the same in trust, however, for the following uses and none other; for a home and place for the maintenance and education of poor children, and the same shall be called the 'Gillis Orphan Asylum.' "

In the instant case the testatrix appointed a trustee who was able and willing to accept and discharge the responsibility of the trust. The objects are designated with certainty and constitute a definite class, to-wit, "poor, homeless children." Under the Missouri authorities cited this is a valid charitable trust, and the chancellor did not err in so holding.

It is also contended by these appellants that the chancellor erred in treating the thirteenth item of the will as giving Mattie Caruth McMillan $5000 to a charitable use, and the jewelry mentioned in the last sentence of this item as a gift to her individually. The money bequests of testatrix by no means exhausted that kind of her property, and there is no apparent reason why she should make a specific gift of jewelry for a charitable use. Appellants cite no authority inconsistent with the construction given this paragraph by the chancellor, and we have been unable to find any. This point is ruled against appellants.

We now come to the residuary clause, as to the meaning of which appellants widely disagree. The only construction suggested in the answer of Herbert Dils Little is that the word "heirs" is there used in its strict technical sense and means only those persons named in the will who are the blood relatives of the testatrix and who would have inherited from her under the laws of the State of Missouri had she died intestate. Obviously this construction must be rejected because the word is used in the plural form and only one person, to-wit, Herbert Dils Little, half-brother of Mrs. McChesney,

is named in the will who would have inherited under the laws of this State had she died intestate. This appellant now contends that the residuary clause should fail for indefiniteness and go by inheritance to the next of kin Herbert Dils Little, or if not, that the direction to divide the residuary estate "among the above heirs" means between the only two blood relatives of the testatrix named in the will, to-wit, Herbert Dils Little and Ruth Little Palmer, who is a cousin of the deceased. The Chandlers, on the other hand, set up in their answer and still contend that the word "heirs" is not used in its strict technical sense and means only "the natural persons to whom by preceding clauses in the will she made pecuniary gifts."

Turning to the points now relied upon by appellant Herbert Dils Little, we shall first consider the contention that the language of the residuary clause is too indefinite and uncertain to be given legal effect, and that, consequently, as to the residue of her estate Blanche L. McChesney died intestate. Appellant's first argument on this head is as follows:

"The very fact that able and experienced counsel in this case have endeavored to reach a proper construction of the language in the residuary clause and have been unable to reach a harmonious conclusion affords sufficient proof that this clause is too indefinite and uncertain to be given legal effect."

The fact that opposing counsel differ in their interpretation of a will is no indication that the will is void for ambiguity. On the contrary, it strongly indicates that the will can be interpreted and given legal effect. Appellant suggested no such argument in his answer or on the trial of the case, and it is wholly inconsistent with his next point wherein he vigorously contends that a very definite interpretation of this same residuary clause is not only possible but inescapable. As a matter of fact, counsel for appellant do not correctly state the rule of law applicable in this case when in their points and authorities and substantially throughout their argument they say that "where the meaning of any portion of a testator's will is uncertain or ambiguous then that portion of the will is void by reason of such uncertainty or ambiguity." The sound doctrine here applicable is thus stated in a footnote on page 454 of Jarman on Wills (6 Ed.) quoting from JESSEL, M. R., in the case of In re Roberts, 19 Ch. D. 520:

"The modern doctrine is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not, as was said in one case, to repose on the easy pillow of saying that the whole is void for uncertainty."

To the same effect are 3 Woerner on American Law of Administration, 1369; 28 Ruling Case Law, pages 227-228; and Sheldon v. King,

229 U. S. 1. c. 101. The duty of the court in every case is to get at the intention of the testator, and our statute has given emphatic repetition to this rule. [Sec. 555, R. S. 1919.] The general trend of Missouri cases fully supports this doctrine. [Grace v. Perry, 197 Mo. 559; Gannon v. Pauk, 200 Mo. 1. c. 85.] It matters not what words are used by the testator to express his intention, or in what popular or peculiar or technical language he expresses himself, the court will give effect to his intention as it may be gathered from the entire instrument. [Cross v. Hoch, 149 Mo. 325.]

Appellant also argues that "it is the duty of the court, when any ambiguity exists in the will, to construe the will under guidance of the presumption that the testatrix intended her property to go to her next of kin 'unless there is a strong intention to the contrary.'" We think such contrary intention is strongly evidenced by the residuary clause itself. In the footnote above cited in Jarman on Wills it is said: "Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property." It is there said that this doctrine is peculiarly applicable to personal property, and in the instant case the estate of the deceased consisted solely of personal property, more than $50,000 of which was disposed of by the residuary clause of the will. Missouri decisions uniformly hold that the general intendment and presumption is against partial intestacy where any other reasonable construction is possible. [Robards v. Brown, 167 Mo. 1. c. 457; Tebow v. Dougherty, 205 Mo. 1. c. 321; Griffith v. Witten, 252 Mo. 1. c. 641.] We think it is entirely possible to interpret and give legal effect to the residuary clause of this will, and perceiving no merit in appellant's opposite contention, we turn to consider his interpretation of this clause which would vest the entire residuary estate in the two blood relatives of the deceased who were named in the will.

A bare statement of appellant's present position shows an utter abandonment of the only claim made in his answer, namely, that the word "heirs" was used in the residuary clause in its strict technical sense. Conceding that if testatrix died intestate as to any of her property, she left only one heir, to-wit, her half brother Herbert Dils Little, to whom the word "heirs" plainly does not refer, appellant, nevertheless, seeks to sustain his present interpretation by contending that the word "heirs" as used in the residuary clause refers only to the named blood relatives of the deceased, and not to all the named legatees, most of whom were not her blood relatives. In support of this contention appellant again argues that when any ambiguity exists in a will it is the duty of the court to construe the will under guidance of the presumption that the testatrix intended her property to go to her next of kin, unless there is a strong intention to the contrary. Again we say, there is intrinsic proof of a

strong intention to the contrary. In the first place, testatrix only named two of her blood relatives in the will and had she desired them to take the residuary estate she doubtless would have mentioned them by name in the residuary clause. In the second place, if she used the word "heirs" in the sense of blood relatives she certainly would have dispelled all ambiguity by stating whose blood relatives were intended. Not only had she taken pains in the will to identify her own two blood relatives but she had also identified certain blood relatives of her deceased husband. Had it been her intention to vest the residuary estate in her blood relatives solely, she would certainly have used the possessive pronoun "my" instead of the indefinite article "the" in the clause, "the above heirs." Furthermore, testatrix was evidently a woman of education who would doubtless know and follow the rules of good usage in the choice of words. In words of her own choosing set down in her own handwriting, and immediately following the last numbered bequest in her will, she directed that her residuary estate be "divided among the above heirs." Lexicographers generally agree that "among" always implies more than two objects, while "between" in its literal sense implies only two. [Webster's New International Dictionary; Standard Dictionary; Greever & Jones, Century Handbook of Writing.] This distinction was recognized and adopted in the will case of Records v. Fields, 155 Mo. 314. While "among" is often incorrectly used for "between" it is very unlikely that testatrix would have so used it. Other indicia pointing the same way might be mentioned but the foregoing sufficiently indicate that it was not the intention of testatrix to vest her residuary estate in her two blood relatives named in the will. This point is also ruled against appellant.

Coming now to the interpretation placed upon the residuary clause by the Chandler appellants, namely, that the word "heirs" means only the natural persons to whom by preceding clauses in the will the testatrix made pecuniary gifts, we find that only two Missouri decisions are cited under this head. The first case is Cross v. Hoch, 149 Mo. 325, and holds (l. c. 336) that "the intention of the testator is the cardinal rule to be observed" in the construction of wills, and that, "it matters not what words are used by testator to express his intention, or in what popular or peculiar or technical language he expresses himself, the courts will give effect to his intention as it may be gathered from the whole instrument." These are good statements of law but in no wise serve to advance appellants' main contention. The next case is that of Records v. Fields, 155 Mo. 314, already cited as showing that the use of the word "among" instead of the word "between" in the residuary clause indicates that the testatrix did not intend that her residuary estate should go to her two blood relatives named in the will. We agree with this construc-

tion, but it lends no aid to appellants' principal contention. Appellants also cite a number of authorities from other jurisdictions, among which are Graham, Executor, v. De Yampert, 106 Ala. 279, and Corbley v. Patterson, 3 Ohio N. P. 315, as showing. that the popular meaning of the word "heirs" does not extend beyond the natural persons named as legatees, and Kenan v. Graham, Executor, 135 Ala. 585, as showing that only the beneficiaries of pecuniary legacies were intended to share in the residue. The opinion in Graham, Executor, v. De Yampert, 106 Ala. 279, does hold that the word "heirs" though used as the equivalent of "legatees" did not include corporate legatees, but the reason for this holding reasonably appears from the language of the residuary clause itself which directs that such residue "be divided pro rata among the heirs *resident* in the State of Alabama." The term *resident* would apparently indicate individual and not corporate legatees. This case is typical of many cases which hold that the word "heirs" when not used in its strict technical sense may be construed to mean legatees, but it is not a controlling or even persuasive authority that corporations should be excluded from the class of legatees in the instant case. In the recent case of Pommer v. Bushnell, 292 S. W. (Mo. Sup.) 417, we held that the word "legatees" used in the residuary clause of a will included corporate as well as individual legatees. The case of Corbley v. Patterson, 3 Ohio N. P. 315, is not in point, because the word "heirs" was there construed in the sense of heirs apparent and not as legatees. In Kenan v. Graham, Executor, 135 Ala. 585, the will contained no residuary clause, but a codicil provided for division of the residuary estate, pro rata, among the "heirs" of testatrix resident in the State of Alabama. A later codicil bequeathed household effects which had not theretofore been disposed of. to legatees named in the will and also gave some table linen to the wife of a legatee named in the will. The wife, though a resident of Alabama, was not mentioned in the will or first codicil. It was held that the residuary legatees were only those persons who were the Alabama legatees of testatrix at the time she executed the first codicil. The facts clearly differentiate this from the instant case on the point raised. We have also carefully examined the other authorities cited by appellants and find that many of them support the view that by the use of the word "heirs" in the residuary clause testatrix meant "legatees," in which view we readily concur, but find no authorities that lead us to believe that the term does not include corporate legatees, or that only the legatees who received pecuniary gifts are included. These contentions of appellants are overruled.

In this connection it is proper to note a further contention of these appellants to the effect that the bequest of one dollar to Elizabeth

McChesney Bradford in the eighth item of the will shows that the testatrix did not intend that she should participate in the residuary estate. The opposite inference seems more reasonable. Elizabeth McChesney Bradford was not a blood relative of testatrix, and the popular impression that a near relative must be mentioned and given a nominal sum in a will would not apply. It is far more reasonable to think that testatrix made this nominal bequest in order that she might be named in the will and thus included among those who would participate in her residuary estate. Appellants' contention in this respect is also overruled.

As already suggested we have found no difficulty in construing the word "heirs" as "legatees" in the residuary clause of this will. Such an interpretation does no violence to any other expressed intention of the testatrix and no other interpretation appears to be as consistent therewith. The record shows that on one occasion at least testatrix in conversation referred to one of her legatees as an "heir" though she was in fact not of kin. In Wells v. Fuchs, 226 Mo. 97, l. c. 107, we took occasion to say: "When we take the whole instrument, we may supply words, and even substitute words in order to get at the intent of the testator, and thereby uphold the will." The same thought has been many times expressed in other Missouri decisions. The word "heirs" in the most general sense means those persons upon whom property at any time devolves on the death of another, either by law or by will. [Century Dictionary; Webster's New International Dictionary; 29 C. J. 292; 40 Cyc. 1459; Clark v. Scott, 57 Pa. 446.] In Klayhart v. Whitehead, 77 N. J. Eq. l. c. 14, it was held to be "well settled that where such is the intention of the will, the words 'heir' and 'devisee' are held to mean 'legatees,' when applied to gifts of personal property." To the same effect also are Eisman v. Poindexter, 52 Ind. 401; Greenwood v. Murray, 28 Minn. 120; Hoke v. Jackman, 182 Ind. 536; In re Hull's Will, 63 N. Y. Supp. 725; Cook v. First Univ. Church, 23 R. I. 62; Roland v. Miller, 100 Pa. 47; Moon v. Stewart, 87 Ohio St. 349; Est. Petterson, 195 Pa. 78; Union Trust Co. v. Shoemaker, 172 Ill. App. 365; In re Stocker's Estate, 26 Pa. Dist. Reports 825, and many other cases.

For the reasons above stated the judgment is affirmed. All concur.