Sarah Frances McMENOMY, Appellant,

v.

Carl WILLIFORD, Executor of the Estate of Bertha Florence Duvall, Deceased, and as an Individual legatee, and as Trustee, et al., Respondents.

No. KCD 27090.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

Motion for Rehearing and/or Transfer Denied Sept. 2, 1975.

Application to Transfer Denied Oct. 13, 1975.

W. V. Mayse, Bethany, for appellant.

John M. Gerlash, Tarkio, Walter L. Mulvania, Rock Port, for respondents, Carl Williford, etc.

John C. Danforth, Atty. Gen., Daniel P. Card, II, B. J. Jones, Asst. Attys. Gen., Jefferson City, for defendant-respondent Atty. Gen.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from declaratory judgment that the residuary clause of a will created a charitable trust.

Bertha Florence Duvall died testate January 7, 1973. Article I of her will provides for payment of debts and expenses; Article III is a bequest to her granddaughter and sole surviving heir, plaintiff Sarah Frances McMenomy; Articles II, IV, V, VI, VII, VII(a), and VIII are similar bequests to defendants-legatees; and Article X appoints her executor. Article IX of the will provides: "All of the rest and residue of the property, * * * I direct to be used for evangelistic and mission purposes. I direct that my executor * * * shall use his sole discretion in determining and ascertaining the corporation, association or persons to whom such residue and remainder shall be paid and the amounts to be paid to the same, providing, however, that I do intend by separate list to be enclosed with this my Last Will and Testament to make suggestions as to the corporation, association, or persons to whom he shall make distribution under this provision and clause of my Last Will and Testament."

Plaintiff's action was in two counts: Count I alleged that Article IX of her grandmother's will did not create a valid charitable trust and that she as the sole surviving heir is entitled to the residue of the estate; Count II alleged, alternatively, that her grandmother's will was void because it was procured by fraud, mental pressure, and undue influence on the part of defendants Williford.

Defendants answered that Article IX of decedent's will created a valid trust; and, in the alternative, if it did not, that plaintiff was estopped from maintaining this action by a stipulation in an earlier action between plaintiff and Bertha Duvall, No. 4250, in the Circuit Court of Atchison County, Missouri.

Plaintiff dismissed Count II prior to submission of the case and thus abandoned all claims except her contention that Article IX of decedent's will failed to create a valid charitable trust and that, therefore, as to the residue of her estate, decedent died intestate.

Plaintiff requested the court, after submission of her case, to determine: (1) whether Article IX of the will was valid; and (2) whether plaintiff was barred or estopped from bringing her action by the stipulation in Cause No. 4250.

The court found: "That Article IX * * creates a valid charitable trust * * * and that the plaintiff is not entitled to have and to receive the residue of the Estate of Bertha Florence Duvall, deceased."

Appellant's position is stated by her contention that if any of the following questions require negative answers, the court erred and the judgment must be reversed to permit plaintiff to prevail:

(1) Did Article IX create any kind of trust, charitable or otherwise? (Point II.)

(2) Was the purpose of such trust, if created, expressed with sufficient certainty that the intent of the donor can be effectuated? (Point III.)

(3) Can the parties to be benefited be identified so that they as "interested parties" could enforce the trustee to act or restrain his breach or threatened breach of trust? (Point IV.)

(4) Does Article IX contain a complete declaration of the donor's intent? (Point V.)

(5) Can Article IX be validly interpreted by rejecting or ignoring the provision for a "list" of persons to whom the trustee "shall" make distribution? (Point VI.)

(6) Did the donor's use of "evangelistic" and "mission" mean, with certainty, religious purposes? (Point VII.)

(7) Were the purposes of the grant actually imposed upon the trustee by connecting the purposes themselves with the grant of discretion to the trustee for distribution purposes? (Point VIII.)

(8) Should the courts continue to hold that religious trusts are to be tested and determined valid by the general rules applicable to charitable trusts which may or may not be religious trusts? (Point IX.)

Appellant asserts: (II) that there is no direction or requirement in Article IX that the trustee distribute to any entity for evangelistic or mission purposes or to be used for such purposes, and the trust needs the missing "list" to identify and determine intended beneficiaries; (III) that "evangelistic" and "mission" do not definitely state donor's intention in that "evangelistic" can mean "with militant zeal," and "mission" can mean "permanent embassy or legation" or a style of architecture, and that some term, such as "Christian," "Mohammedan," or "religious," is necessary to give religious connotation to Article IX; (IV) that the class of beneficiaries is not sufficiently described to prevent the trustee from paying the residue to himself and there would be no party in interest to prevent this; (V) that by failing to include the "list" of suggested beneficiaries, the donor intended to revoke or limit the discretion granted her trustee, and that her complete intent cannot be known without such list; (VI) that a will cannot be construed valid by ignoring parts of it, in this case the list provision; (VII) that "evangelistic" and "mission" can mean "religious" evangelism or missions only by speculation and conjecture; (VIII) that the purpose of the trust is not directly connected with and imposed upon the trustee to be expended or used for the purpose of the trust; (IX) that the courts should reconsider past decisions that religious trusts are necessarily charitable trusts to prevent distribution of trust funds under the guise of religious purposes to such entities as an "Indian guru," "Mohammed Ali," and the "Symbionese Liberation Army."

The dispositive question is whether this devise in trust to a named trustee to be used in the discretion of said trustee for "evangelistic and mission purposes" creates a valid public charitable trust. If this question is answered in the affirmative, a sec-

ondary question is whether the valid, public charitable trust thus created is unenforceable if the trustor does not supply her indicated "list * * * to make suggestions as to the corporation, association or persons" to whom her trustee would make distribution.

■ In Missouri, a gift for religious or educational purposes is a gift for charitable purposes. Particular words are not required to create such a trust, since equity need only to ascertain the charitable intent of the creator of the purported trust. Even though beneficiaries of a charitable trust be indefinite, the trust is not invalid since a trust is not a charitable trust if all beneficiaries are definitely ascertained. Charitable trusts are favorites of equity and are construed valid where possible and where private trusts would fail. *Yeager v. Johns*, 484 S.W.2d 211, 213[1–4] (Mo.1972), and cases cited. Missouri also recognizes that "if the general objects of the bequest are pointed out, or if the testator has fixed a means of doing so by the appointment of trustees with that power invested in them, then the gift must be treated as sufficiently definite for judicial cognizance, and will be carried into effect," *Howe v. Wilson*, 91 Mo. 45, 3 S.W. 390, 392 (1887); and "a charitable trust is valid, although by the terms of the trust the trustee is authorized to apply the trust properly to any charitable purpose which he may select and the trustee is able and willing to make the selection," 2 Rest. Trusts 2d 283, § 396; *Yeager v. Johns*, supra, 484 S.W.2d l. c. 215.

■ There is no question that a devise in trust to a named trustee to be used in the discretion of the trustee "for religious and educational purposes" creates a valid, public charitable trust. *Yeager v. Johns*, supra.

"Evangelistic" has a primary, plain, and usual meaning as "of or relating to evangelism * * * a missionary or revivalist character or purpose," Webster's Third New International Dictionary. Similarly, "evangelical" is defined as "according to the Gospel; consonant to the doctrines and principles of the Gospel; conforming to the principles of the Gospel of Christ; contained in the Gospel; sound in the doctrines of the Gospel; orthodox," 76 C.J.S. Religious Societies § 1(j), p. 744; and an evangelical faith signifies a full acceptance of the Gospel, *Leeds v. Harrison*, 9 N.J. 202, 87 A.2d 713, 717 (1952).

■ "Mission" has a primary, plain and usual meaning as "ministry commissioned by a religious organization * * * a ministry (as preaching or educational or medical work) commissioned by a church or some other religious organization for the purpose of propagating its faith or carrying on humanitarian work * * * a mission institution * * *," Webster's Third New International Dictionary, and "as an association which sends teachers into heathen countries to Christianize, civilize, and educate the natives; * * * 'missionary' is a person sent by ecclesiastical authority to labor for the propagation of his religious faith in a community where the church has no self-supporting indigenous organization," 76 C.J.S. supra, § 1(e), p. 742. Accordingly, Mrs. Duvall, in using "missionary" and "evangelistic," intended her trust funds to be used for religious charitable purposes. *Epperly v. Mercantile Trust & Savings Bank*, 415 S.W.2d 819 (Mo.1967); *Glidewell v. Glidewell*, 360 Mo. 713, 230 S.W.2d 752 (1950).

■ So construed, Mrs. Duvall's devise in trust to Carl Williford, executor, to be given further to entities selected in his sole discretion for evangelistic and mission purposes, i. e., religious purposes, created a valid public charitable trust. The distributees or beneficiaries are sufficiently certain, i. e., entities engaged in evangelistic and mission purposes to be selected in the discretion of a named trustee, who is ready, able and willing to act. When so selected, such purposes become fixed and definite; and, being religious purposes, they are the

essence of a public, charitable trust. Innumerable uses or purposes may be benefited, dependent upon the trustee's exercise of his discretion, an essential element of a charitable trust. The court need not and cannot specify what evangelistic and mission purposes the trustee shall select; but the court may compel a selection and can control diversion from proper and selected purposes. This declaration is supported by many cases construing similar devises in trust to have created valid, public trusts as against charges similar to those made by appellant. See, e. g., *Chambers v. City of St. Louis*, 29 Mo. 543, 572 (1860), for "poor emigrants and travelers coming to St. Louis on their way, bona fide, to settle in the west"; *Howe v. Wilson*, supra, 3 S.W. 390, "to divide said remainder among such charitable institutions in the city of St. Louis, Mo., as he shall deem worthy"; *Powell v. Hatch*, 100 Mo. 592, 14 S.W. 49 (1890), "to such charitable purposes as my said trustee may deem best"; *Sandusky v. Sandusky*, 261 Mo. 351, 168 S.W. 1150 (1914), "for the general advancement of Christianity." See also *St. Louis Union Trust Co. v. Little*, 320 Mo. 1058, 10 S.W.2d 47 (1928); *Standley v. Allen*, 349 Mo. 1115, 163 S.W.2d 1012 (1942); *Yeager v. Johns*, supra; *Epperly v. Mercantile Trust & Savings Bank*, supra. The declaration is consistent also with the majority position and the trend of decisions in the United States. See Scott, Trusts, §§ 395–397 (3d ed. 1967); Rest.Trusts 2d, §§ 395–397 (1959); Anno. 163 A.L.R. 784 (1946); 168 A.L.R. 1350 (1947).

Appellant relies primarily on *Jones v. Patterson*, 271 Mo. 1, 195 S.W. 1004 (1917), which, although it recognized that "missionary purposes" is synonymous with "religious purposes," held a devise in trust "for missionary purposes in whatever field he [trustee] thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls" invalid on the ground the language was too indefinite to create a charitable trust.

Some writers question whether the holding of *Jones v. Patterson*, supra, has been

overruled, see, e. g., 32 Mo.L.Rev. 443, 458; 39 Mo.L.Rev. 51, 56; however, there is no doubt that it has been questioned, distinguished, overruled, at least by implication, and is no longer followed. This was indicated first in *Irwin v. Swinney*, 44 F.2d 172 (D.C.Mo.1930). Harry Wilson Loose devised the residue of his estate to trustees who were to " * * * use and apply the principal and income * * * for the furtherance and development of such charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research purposes in Kansas City, Missouri, as said trustees shall in their absolute discretion determine to be in the public interest." Plaintiffs conceded that the testator attempted to create a charitable trust, but contended that it failed because the attempted trust was not for charitable purposes and, even if for charitable purposes, it was void and unenforceable because of vagueness and indefiniteness. The court held that the devise created a trust for purposes exclusively "charitable" within the technical meaning of that term, and that its general objects were stated with all the definiteness required by Missouri law. The court relied on *Howe v. Wilson, Chambers v. City of St. Louis*, and *Powell v. Hatch*, supra; and, with respect to *Jones v. Patterson*, stated: "One may accept and follow the principles of law recognized in this case without agreeing to the interpretation which the court placed on the particular instrument before it. It is the law of the case with which we are concerned. We are not so much concerned with whether it may have been misapplied. It is interesting to note that in a later decision * * * *Harger et al. v. Barrett, et al.*, 319 Mo. 633, 5 S.W.2d 1100 [1928], in which the opinion was written by the same judge who was the author * * * in *Jones v. Patterson*, that judge cited and commented on * * * *Sandusky v. Sandusky*, 261 Mo. 351, 168 S.W. 1150, 1151, and called attention with approval to its decision that a gift to a trustee 'for the "general advancement of Christianity" ' was valid, an indication that

even he could not adhere to what must seem to be a misapplication of true principles to facts in *Jones v. Patterson* \* \*." 44 F.2d l. c. 133.

*Irwin v. Swinney,* supra, was affirmed in *Gossett v. Swinney,* 53 F.2d 772 (8th Cir. 1931), and the court said: "With respect to the charge that this bequest is too general and indefinite, the ruling in *Jones v. Patterson,* and the dictum in *Wentura v. Kinnerk* [319 Mo. 1068, 5 S.W.2d 66 (1928)], are expressly bottomed upon a misapprehension of the holding in *Morice v. Bishop of Durham* [32 Eng.Rep. 947 (1805)], supra. In so far then as these cases, upon which appellants chiefly rely, are deemed to be in conflict with the principle announced in *Chambers v. City of St. Louis, St. Louis Union Trust Company v. Little,* and others of like tenor, they are not in harmony with the great body of Missouri decisions, and do not express the policy of that state with respect to charitable uses and trusts." 53 F.2d l. c. 783.

*St. Louis Union Trust Co. v. Little,* supra, 10 S.W.2d l. c. 50, affirmed the validity of a devise in trust "to be spent on the welfare of poor, homeless children," relying on *Howe v. Wilson* and *Powell v. Hatch,* supra, and rejecting *Jones v. Patterson,* supra.

*Altman v. McCutchen,* 210 S.W.2d 63 (Mo. 1948), upheld a devise in trust " \* \* \* to [the] charitable and other institutions devoted to alleviation of human suffering and want \* \* \*," relying on *Howe v. Wilson, Powell v. Hatch, Sandusky v. Sandusky, St. Louis Union Trust Co. v. Little, Irwin v. Swinney,* and *Gossett v. Swinney,* supra, and rejecting *Jones v. Patterson,* supra.

*Epperly v. Mercantile Trust & Savings Bank,* supra, upheld this devise: "I leave to the discretion of my Trustees the distribution of the income to Protestant churches and religious organizations but direct that the gifts be used to save souls and not to build buildings or to improve existing build-

ings." Again, the court relied on *Howe v. Wilson,* supra, discussed all the oft-cited charitable trust cases and authorities, and stated: "Where \* \* \* a trust provision gives to the trustee discretion in applying the trust property to the specified charitable purpose \* \* \* *Jones v. Patterson* \* \* \* should not be followed." 415 S.W.2d l. c. 822.

*Yeager v. Johns,* supra, again reviewed the cases and authorities on charitable trusts, rejected *Jones v. Patterson,* supra, as an authority, and heeded the direction in *Epperly v. Mercantile Trust & Savings Bank,* supra, that *Jones v. Patterson* is not to be followed. *Yeager v. Johns* recognized the question of the writer in 32 Mo.L.Rev. 443, with respect to whether *Jones v. Patterson* was to be considered as an authority on charitable trusts, and held, as against any such doubt, "that a devise in trust [i. e., a power of appointment] to unspecified charities creates a valid, public charitable trust even though the instrument creating the [power] does not limit in any way the possible charitable appointees. This has long been the law in Missouri, e. g., *Chambers v. City of St. Louis,* supra (1860), *Howe v. Wilson,* supra (1887), *Powell v. Hatch,* supra (1890) \* \* \*." 484 S.W.2d l. c. 215[9].

Appellant's question whether parties to be benefited are identified sufficiently as parties in interest to enforce the trust or restrain its breach is answered in *Murphey v. Dalton,* 314 S.W.2d 726, 730[1, 2] (Mo. 1958): " \* \* \* the Missouri Attorney General represents the Missouri public in matters pertaining to and connected with public charitable trusts. \* \* \* 'The public is the beneficiary of the trust, and the attorney general, as its representative, was [is] the only real party in interest, or required to be made a defendant.' " See also *Yeager v. Johns,* supra, 484 S.W.2d l. c. 215[8].

Appellant's argument that there is no direction on requirement that the trustee

distribute the residual estate to any entity for mission or evangelistic purposes, or to be used for such purposes, is difficult to follow. The language of Article IX imposes a duty on the trustee to distribute such money for evangelistic and mission purposes, and leaves to his discretion only the selection of entities capable of receiving monies for such purposes. Violation of such direction by donation to a friend, for example, not engaged in such purpose, could and would be controlled by a court. *Yeager v. Johns, Irwin v. Swinney, supra.*

Nor did this otherwise valid, charitable trust fail when Mrs. Duvall failed to supply her "list" of suggested distributees.

A charitable trust will stand so long as there is a trustee empowered to select its beneficiaries and a charitable object or purpose stated. *Irwin v. Swinney, Yeager v. Johns, Epperly v. Mercantile Bank & Trust,* supra. Article IX of Mrs. Duvall's will named a trustee and empowered him with sole discretion to determine beneficiaries within her stated charitable purposes. Her intention and provision for suggestion of beneficiaries would not affect her trustee's sole discretion unless and until such list is provided. *Ostmann v. Ostmann,* 237 Mo.App. 223, 169 S.W.2d 81 (1943); *Jones v. Nichols,* 280 Mo. 653, 216 S.W. 962 (1919). Article IX is thus a complete charitable trust devised without the "list" or "suggestions" from the donor. See also 2 Rest.Trusts 2d 395(b).

Judgment affirmed.

All concur.