**IRWIN et al. v. SWINNEY et al.**

No. 1284.

District Court, W. D. Missouri, W. D.
Oct. 20, 1930.

Ben R. Estill, A. N. Gossett, Henry L. Jost, Claude S. Gossett, and Arthur Miller, all of Kansas City, Mo., Wm. Seward Allen, of New York City, and John T. Harding, of Kansas City, Mo., for plaintiffs.

Ryland, Stinson, Mag & Thomson, of Kansas City, Mo., for defendant executors and trustees.

John S. Wright and Leslie A. Welch, both of Kansas City, Mo. (Abraham E. Margolin, of Kansas City, Mo., on the brief), for defendant Stratton Shartel, Attorney General of Missouri.

McCune, Caldwell & Downing, R. R. Brewster, Harkless & Histed, Winger, Reeder, Barker, Gumbiner & Hazard, Madden, Freeman & Madden, Hogsett & Boyle, Langworthy, Spencer & Terrell, Scarritt, Jones & North, and Alfred Gregory, all of Kansas City, Mo., for interveners.

OTIS, District Judge.

On August 1, 1927, Harry Wilson Loose, a resident of Kansas City, Mo., executed his last will and testament. He died December 20, 1927. By one of the provisions of his will the residue of his estate, after the payment of specific bequests, was devised to named trustees, who were to "invest, reinvest the same, collect and receive the rents, issues and profits thereof, and from time to time use and apply the principal and income of said trust estate for the furtherance and development of such charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research purposes, in Kansas City, Missouri, as said trustees shall in their absolute discretion determine to be in the public interest. Such application may be made either by donation to institutions of the character above mentioned or through the formation of corporations or associations for

the development of such purposes and contributions to such corporations or associations."

The trustees named by Harry Wilson Loose in his will are the defendants in this case. Joined with them is the Attorney General of Missouri. The plaintiffs, the heirs at law of Harry Wilson Loose, have brought this action to recover the residue of the estate upon the theory that the trust attempted to be created by the testator is void and that the trustees now holding the residue of the estate hold it in trust for them (the plaintiffs). Conceding that the testator attempted to create a charitable trust, they maintain that in that he failed for two reasons: First, that the attempted trust is not for charitable purposes only; and, second, that if only for charitable purposes, it is nevertheless void and cannot be enforced because of vagueness and indefiniteness.

■ It is conceded by all that the questions involved in this case must be determined in accordance with Missouri law. Jones v. Habersham, 107 U. S. 174, 179, 2 S. Ct. 336, 27 L. Ed. 401; Loring v. Marsh, 6 Wall. 337, 355, 18 L. Ed. 802; Wheeler v. Smith et al., 9 How. 55, 78, 13 L. Ed. 44. I proceed then to consider in their order whether under Missouri law the will of Harry Wilson Loose did create a trust exclusively for charitable purposes, and whether, if it did, the trust so created is so vague and indefinite as to be void and unenforceable.

■ 1. The theory of plaintiffs is that by his will the testator authorized the trustees appointed by him to expend the trust fund for purposes not necessarily "charitable" within the technical meaning of that term as it is employed in connection with charitable trusts. If the trustees may expend the fund or any part thereof for purposes which are not charitable, then, say plaintiffs, no charitable trust has been created, even if the trustees do select only undoubtedly charitable purposes. Plaintiffs say that the validity of the trust must be determined by what the trustees can do, not by what they will do. The contentions of the plaintiffs as to what the law is in these regards undoubtedly are correct. So that our first question is reduced to this: May the trustees expend this fund for other than "charitable" purposes within the technical meaning of that word.

The question must be approached by first defining what is the technical meaning of "charitable." Then we must ascertain from the will what, without transgressing the limitations imposed on their discretion, the trustees may do with this fund. Finally we must apply the definition of "charitable" to what the trustees may do and so discover whether what they may do is necessarily charitable.

There is no controversy that under Missouri law that may be a charitable use which was not mentioned eo nomine in the statute of 43 Elizabeth. Chambers v. City of St. Louis, 29 Mo. 544, 584; Missouri Historical Society v. Academy of Science, 94 Mo. 459, 466, 8 S. W. 346; Buchanan v. Kennard, 234 Mo. 117, 135, 136 S. W. 415, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D, 50. That statute did not create the law validating charitable trusts. It aimed only to prevent abuses such as had theretofore grown up in the administration of such trusts. While it enumerated various classes of then generally recognized charitable trusts,[1] and while those it did enumerate ever after have been recognized as trusts which are charitable (Buchanan v. Kennard, 234 Mo. 117, 136, 136 S. W. 415, 37 L. R. A. [N. S.] 993, Ann. Cas. 1912D, 50), it did not purpose to set out an exclusive enumeration. It is not now necessary to debate whether a bequest is charitable if it is for one of the purposes mentioned in the statute of Elizabeth, but it is still for inquiry whether a bequest for purposes not mentioned in the statute may not, nevertheless, be charitable.

The definitions in Missouri law of "charitable" are these: "Whatever uses, although they are not within the strict letter of the statute of Elizabeth, nevertheless come within its spirit, equity and analogy are charita-

[1] The classes of charitable trusts enumerated in the statute of 43 Elizabeth are set out in its preamble, which is: "Whereas, Lands, Tenements, Rents, Annuities, Profits, Hereditaments, Goods, Chattels, Money and Stocks of Money, have been heretofore given, limited, appointed and assigned, as well by the Queen's most excellent Majesty, and her most noble Progenitors, as by sundry other well disposed persons; some for Relief of aged, impotent and poor People, some for Maintenance of sick and maimed Soldiers and Mariners, Schools of Learning, Free Schools, and Scholars in Universities, some for Repair of Bridges, Ports, Havens, Causways, Churches, Sea-Banks and Highways, some for Education and Preferment of Orphans, some for or towards Relief, Stock or Maintenance for Houses of Correction, some for Marriage of poor Maids, some for Supportation, Aid and Help of young Tradesmen, Handicrafts-men and Persons decayed, and others for Relief or Redemption of Prisoners or Captives, and for Aid or Ease of any poor inhabitants concerning Payments of Fifteens, setting out of Soldiers and other Taxes; which Lands Tenements, Rents, Annuities, Profits, Hereditaments, Goods, Chattels, Money and Stocks of Money, nevertheless have not been employed according to the charitable Intent of the givers and Founders thereof, by reason of Frauds, Breaches of Trust, and Negligence in those that should pay, deliver and employ the same; For Redress and Remedy whereof, Be it enacted by Authority of this present Parliament," etc.

ble." And, again, "Any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience, is a charity." Buchanan v. Kennard, 234 Mo. 117, 135, 136 S. W. 415, 419, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D, 50. See also, as to the second definition, Missouri Historical Society v. Academy of Science, 94 Mo. 459, 466, 8 S. W. 346.[2]

Now, what may the trustees under the will here do with the fund intrusted to them? They may expend it "for the furtherance and development of such charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research purposes in Kansas City, Missouri, as (they) shall * * * determine to be in the public interest." May an expenditure for a purpose which is in the public interest and which is charitable or benevolent or hospital or infirmary or public or educational or scientific or literary or library or research be otherwise than an expenditure for a charitable purpose?

A decision directly in point makes it unnecessary to consider whether the first of the words used in the will, the word "charitable," possibly includes purposes other than those to which charitable trusts are necessarily restricted. In Howe v. Wilson, 91 Mo. 45, 3 S. W. 390, 391, 60 Am. Rep. 226, where the bequest was "for charitable institutions," the court said that "the testator must be taken to have used the word 'charitable' in its legal signification" and that "no question, then, can arise as to the character of the bequest." The Missouri law as thus declared stands unmodified by any subsequent decision.

No decision of the Supreme Court of Missouri has passed upon the question as to whether a bequest for "benevolent" purposes

is or is not a charitable bequest.[3] Various decisions of English courts have been to the effect that such a bequest does not create a valid charitable trust. I am of the opinion that as used in this will the word must be understood and was intended by the testator as synonymous with "charitable."

In Saltonstall v. Sanders, 11 Allen (Mass.) 446, a case several times cited in Missouri cases (e. g. Howe v. Wilson, 91 Mo. 45, 51, 3 S. W. 390, 60 Am. Rep. 226; Barkley v. Donnelly, 112 Mo. 561, 572, 19 S. W. 305), Judge Gray so construed the word "benevolence." The great learning and ability of Judge Gray, which at a later time distinguished him even among his distinguished associates on the United States Supreme Court, give especial weight to his views. In the Saltonstall Case, in which the bequest was "in aid of objects and purposes of benevolence or charity, public or private," he held that "benevolence" was to be interpreted as having the same meaning as "charity." Recognizing that while the word "benevolence" might not always have a meaning identical with the word "charity," he reached the conclusion that in the instrument before him they were intended to be synonymous by applying the maxim, "Copulatio verberum indicat quod accipiantur in odem sensu," and by considering that in various Massachusetts statutes the two words had been employed synonymously.

In the present case the maxim used by Judge Gray is equally applicable, for here, as in the Saltonstall Case, the word "benevolent" is coupled with the word "charitable." In Missouri statutes also, as in those of Massachusetts, the words "charitable" and "benevolent" frequently are linked together as embodying, if not identical, at least closely related concepts.[4] The words often have been used synonymously by the Missouri Su-

---

[2] Another often quoted definition of "charity" is that first formulated by Judge (later Mr. Justice) Gray in Jackson v. Phillips, 14 Allen (Mass.) 555, 556, and cited with approval by the Supreme Court of Missouri, in Re Estate of Jacob Rahn, 316 Mo. 492, 511, 291 S. W. 120, 51 A. L. R. 877; in Robinson v. Crutcher, 277 Mo. 1, 8, 209 S.W. 104; in Catron v. Scarritt Collegiate Institute, 264 Mo. 713, 725, 175 S. W. 571; and in Crow ex rel. v. Clay County, 196 Mo. 234, 260, 95 S. W. 369, 375, as follows: "A charity in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, by relieving the bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or erecting and maintaining public buildings or works, or otherwise lessening the burdens of government."

[3] I have not overlooked the fact that in one decision of the Supreme Court of Missouri, Schmuacker's Estate v. Reel, 61 Mo. 592, 597, there is dictum as follows: "Bequests for purposes of benevolence and general liberality, such as the trustee shall approve or direct, cannot be supported either as general trusts or for charitable uses." The language quoted is dictum since there was no such question involved in the case. In support of the dictum Morice v. Bishop of Durham, 9 Ves. 399, was cited. But neither in the dictum nor in the instrument considered in Morice v. Bishop of Durham was the word "charity" used in connection with the words "benevolence" and "liberality" so as to color and limit their significance.

[4] Thus the Missouri tax exemption statute, section 587, Rev. St. Mo. 1919, provides that property passing to or for the use of "any hospital, religious, educational, Bible, missionary, scientific, benevolent or charitable purpose in this state" shall not be subject to any tax.

preme Court. The general lexicographers, moreover, give "benevolent" as one of the meanings of the word "charitable," and "charitable" as one of the meanings of the word "benevolent."

■ If there are two meanings of a word, one of which will effectuate and the other will defeat the testator's object, the court is bound to select that meaning of the word which will carry out the intention and objects of the testator. In re Estate of Jacob Rahn, 316 Mo. 492, 512, 291 S. W. 120, 51 A. L. R. 877; Sappington et al. v. Sappington School Fund Trustees, 123 Mo. 32, 41, 27 S. W. 356.

■ The words "hospital," "infirmary," "educational," "scientific," and "library" require no especial discussion, since they are clearly either within the letter of the statute of Elizabeth or "within its spirit, equity and analogy." The statute does not mention "hospitals" and "infirmaries" by name, but it refers to gifts for the "relief of aged, impotent, and poor people" and for "the maintenance of sick and maimed soldiers and mariners." Certainly "hospitals" and "infirmaries" are for these and analogous purposes. Moreover, the Supreme Court of Missouri expressly has held, relying for precedent upon a case (Wakering v. Bayle, Proceedings in Chancery, vol. I) anteceding the statute of Elizabeth, that a bequest for the erection of a hospital created a charitable trust. Buchanan v. Kennard, 234 Mo. 117, 136 S. W. 415, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D, 50. As for the word "infirmary," that is but another name for a type of "hospital," "a place where the infirm or sick are lodged and nursed gratuitously or where patients who are not resident are treated." If the word "hospital" is embraced by analogy within the purposes recognized as charitable by the statute of Elizabeth and decisions antecedent thereto, the word "infirmary" certainly also is included.

The statute of Elizabeth does not use the words "educational" and "library," but it does use the analogous and similarly meaning terms "schools of learning" and "free schools." Gifts for "educational" or "library" purposes are within its spirit, equity, and analogy.

In any event, all of the purposes thus far referred to are embraced within the definition of what is a charity, twice given by the Supreme Court of Missouri, to wit: "Any gift not inconsistent with existing laws, which is promotive of science, or tends to the education, enlightenment, benefit, or ameliora-

tion of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience, is a charity." Missouri Historical Society v. Academy of Science, 94 Mo. 459, 466, 8 S. W. 346, 348; Buchanan v. Kennard, 234 Mo. 117, 135, 136 S. W. 415, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D, 50.

That a gift for "scientific" purposes is a charitable gift was expressly held in Missouri Historical Society v Academy of Science, supra. The gift there was for the purposes of the Academy of Science. The word "literary" is so clearly related to the word "educational," and the word "research" is so clearly related to the word "scientific," that whatever justifies the conclusion that what is educational or scientific is charitable, includes the conclusion that whatever is literary or research also is charitable.

Of the several words used in the will here, only the word "public" remains. It seems to me that this word also must be said to be embraced within the "spirit, equity and analogy" of the statute of Elizabeth. If gifts for hospitals and infirmaries are within the statute, if gifts for schools of learning are within the statute, if gifts for such public purposes as the "repair of bridges, ports, havens, causways, churches, sea-banks and highways" are within the statute, by what possible process of reasoning can a gift for any public purpose be said not to be within the analogy, equity, and spirit of the statute, especially when, as here, it is limited to one community.

It is contended that under the terms of the Loose will the trustees may give from the trust fund to institutions which are maintained primarily for private gain, although incidentally promoting the public good. The contention is illustrated by the suggestion that the trustees might bestow outright gifts on a railroad company, on a commercial college, on a private hospital. If they can do that I agree that this is not a charitable trust. But they cannot do that.

Let us take one of the cases mentioned as specifically illustrating the contention, the case of the Kansas City Business College (an institution wherein shorthand, typewriting, bookkeeping, and other business college subjects are taught, an institution maintained and operated by its owners for their own pecuniary profit). Can the trustees here give from the trust fund $50,000 or any other sum unconditionally to that college? Plaintiffs say, "Yes," since it is, they say, an educational institution which may be said to be "in the public interest." But it seems to me the answer must be, "No."

The trustees are not authorized to give to educational institutions. They are authorized to give for educational purposes. The institution is merely the means used to accomplish the end sought. If the Kansas City Business College is owned by stockholders A, B, and C, who through directors selected by them may divide among themselves in the form of dividends whatever comes into the treasury, then certainly an unrestricted gift by the trustees to the Kansas City Business College would not necessarily be a gift for educational purposes. But the trustees cannot in this connection give except for educational purposes. Hence they cannot make an outright and unconditional gift to the Kansas City Business College. If they give from this fund to that institution, it must be for the promotion of education and the gift must be so limited. If it is so limited it is a gift in charity and not the less so because incidentally some additional pecuniary gain may come from it to individuals, as to the teachers or managers in the school or even to the stockholders whose investments have made its existence possible.

To say that a gift is not charitable unless every penny given reaches the ultimate recipients in the donor's contemplation, that it is not charitable if individuals other than the ultimate recipients incidentally may profit, is to say that there shall be no charity more complex than the dropping of a coin into a beggar's hand. If one gives a million dollars to trustees to be used in the erection of a bridge for public use across a great river, is that not a charitable trust? It is within the very words of the statute of Elizabeth. But certainly the expenditure of that amount will bring pecuniary gain to a thousand working men and dealers in materials and a substantial fortune to the contractor. The contractor is not in business from any motive of benevolence or charity. He is in business for money and that only. But that is incidental. To the donor and to the public the bridge is the essential thing and it is charity to give it no matter if incidentally individuals reap private profits. And is it not charity to make provision for the training of young men and women in shorthand and typewriting and bookkeeping that thereby they may somewhat raise themselves in the scale of life? Certainly it is. Is it the less so because for that purpose use is made of an already existing instrumentality, even if that instrumentality was brought into existence and is maintained for private gain, and even although that gain is increased by this new use? There was pe-

cuniary profit to the innkeeper, was there not, even in the beneficence of the Good Samaritan? And suppose that same Samaritan, not content with a single act of charity, had left with a friend a thousand shekels to be expended at the usual rates with the grasping and absolutely selfish keeper of the inn (if that was his character) for the relief of all poor travelers who, going down to Jerico, might fall among thieves, would that not be a charitable trust?

And so I say as to every one of the institutions existing primarily, for private gain by which plaintiffs have sought to illustrate their argument, to not one of them can these trustees make an unrestricted gift. So far as the law of charitable trusts is concerned, however, they can give to any of them upon condition that the money given is to be used for charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library, or research purposes, in the public interest and in Kansas City. Under the law of charitable trusts, I say that may be done, but under this will the trustees may not go so far. They are not authorized to give to any institutions even for the purposes stated in the will. They may make donations only to institutions "of the character above mentioned." Of what character is that? Well, for example, if it is an educational institution, it must be one existing "in the public interest." An institution maintained for private gain is not one existing "in the public interest." The phrase "in the public interest" either means "exclusively in the public interest" or it means nothing. Every legitimate business institution in a certain broad sense serves the public interest. If no more than that is meant by the phrase as it is used here, then it means nothing. Obviously it describes and was intended to describe institutions of a purely public character, and it should be so interpreted if a broader construction would have the effect of defeating the intent of the testator.

But it is contended that the phrase "in the public interest" in the connection in which it is used in the Loose will does not have the effect of limiting the donations the trustees may make. They are to apply the fund to such of the purposes provided for as they shall "in their absolute discretion determine to be in the public interest." The effect of this, so it is contended, is to enable the trustees to say that what in fact is not in the public interest is in the public interest. For example, they may say a particular gift for research purposes, as to the General Electric

Company for research in the field of physics, the results to be incorporated in a radio improvement thereafter to be commercially marketed, is in the public interest when really it is in the private interest of that company.

■ I do not so construe this will. Had the language used been that the trustees should apply the fund to such research purposes as are in the public interest, it would have meant precisely what it does mean and all that it does mean. It would still have been for the trustees in their discretion to have selected the particular research purpose to be aided and in their discretion to have determined whether that purpose was in the public interest. In every charitable trust discretion is lodged in the trustees. Always that discretion is an "absolute" discretion in the sense (and such is the sense in which clearly the word is used here) that within the limits fixed it is not to be controlled by the will of any other. Of the innumerable conceivable research purposes serving the public interest in Kansas City, the trustees have the absolute discretion to select the ones to be assisted from the fund, and neither private individuals nor courts can direct them or control them in that selection. But absolute discretion within fixed limits is no discretion to go beyond these limits. Let these trustees attempt to divert this fund to a purpose not mentioned in the will and not in the public interest, and immediately they subject themselves to the restraint of a court of equity.

As to the first of the questions in the case, then, I conclude that the trustees under this will can expend the fund committed to them only for purposes strictly charitable within the technical legal meaning of that term.

■ 2. Assuming now that the will here authorized the trustees to expend the fund only for charitable purposes in Kansas City, I examine the second of the two questions presented by this case; are the terms of the trust so vague and uncertain as to make it void and unenforceable? My conclusion as to that, reached after study of all of the Missouri cases which bear upon the subject, is that the question must be answered in the negative.

That the doctrine of charitable trusts which had its origin in the English common law and which was recognized in the statute of 43 Elizabeth (and both the common law and the statute mentioned are incorporated in the jurisprudence of Missouri) is recognized and applied in this state is unquestionable. That part of the doctrine of charitable

trusts which declares that an attempted trust may be described with such vagueness and uncertainty as to be void and unenforceable is also Missouri law. The thing to be done is, from a consideration of Missouri law as that law is evidenced in the decisions of the Supreme Court of the state, to formulate the principles by which it may be determined whether language seeking to create a charitable trust is so vague and uncertain as to render it void and unenforceable and then to apply those principles to the language used in this will.

Of all of the Missouri decisions dealing with the subject, the first is fullest and perhaps most scholarly. It sets out underlying principles. Subsequent decisions do not generally go beyond precedents to principles. This first Missouri decision, Chambers et al. v. City of St. Louis, 29 Mo. 543, was decided in 1860.

The Chambers Case had to do with the will of Bryan Mullanphy, who bequeathed a part of his estate to a trustee "in trust, to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way, bona fide, to settle in the west." The trust so sought to be established was attacked by Mullanphy's heirs on the ground, among others, that "the trust as declared by this will is so vague, uncertain and indefinite as to be void." The objection was particularized thus: That the will was indefinite as to the character of relief to be furnished to poor emigrants; that it was indefinite as to what emigrants were intended, whether emigrants from foreign lands or from other states or from both; that it was indefinite as to who were to be considered as "travelers"; that it was not confined to travelers who might be in need of relief; that it was indefinite as to whether those to be relieved should be persons merely passing through St. Louis or perhaps permanently settling there; that it was indefinite in providing no means of determining whether emigrants and travelers were in good faith on their way to settle in "the west"; that it was indefinite as to what constituted "the west."

To the objections thus made the Supreme Court of Missouri, after a thorough review of the history and law applicable to charitable trusts, said:

"The only remaining question to be considered is whether the trust of this will can be enforced on account of the uncertainty of those who are to be benefited by it. The case, as we view it, shows that there is a

valid devise to a trustee capable of taking the subject of the devise and competent to undertake and execute the trust with which the devise is clothed. As the general object of the charity was specific and certain, and not contrary to any positive rule of law, with a competent trustee to execute the charity designated, we do not see on what ground this objection can rest. If, under such circumstances, the uncertainty of the persons to be relieved by a charitable fund could be available to destroy it, few charities could be sustained. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law for charitable uses different from that which governs all other trusts. * * * From the very nature of the subject, charitable gifts must be objects vague and uncertain. The subjects of the charity may be numerous, and they are to be sought for and ascertained by those to whose discretion and judgment the dispensation of the relief is entrusted. The founder of a charity, by placing his fund in the hand of a competent trustee, designating the general object of the trust, with power to carry that object into effect, makes the trustee his substitute or delegate. Can not any individual, who has the means, employ them for the relief of 'poor emigrants and travelers coming to St. Louis on their way to settle in the west?' If he can carry out this charity himself, may he not appoint another to do it for him? Could it be objected to such a course that the trustee would not know how to act? As the donor of the bounty is willing to confide its management to the discretion of his agent, so long as that agent acts in good faith his acts are the acts of his principal, and there is no one but the principal to complain. If the agent abuses his trust, he, like all other fiduciary agents, is subject to the control of the courts.

"But the answer to the objection of uncertainty is, that by the law, as it stood unaffected by the statute [that is the statute of 43 Elizabeth], courts of equity, by virtue of their inherent powers, would execute such trusts and carry them into effect. In the case of Mogridge v. Thackwell, 7 Ves. 86, it was held by Lord Eldon that where there is a general indefinite purpose, not fixing itself upon any object, the disposition is in the king by sign manual; but where the execution is to be by a trustee, with general or some objects pointed out, there the court will take the administration of the trust."

I conceive that the principle announced by the Supreme Court of Missouri in this decision is this: That mere indefiniteness as to the recipient of the bounty to be dispensed under a charitable trust in no way affects its validity so long as there is a trustee empowered to select the recipients, provided general objects are sufficiently described that a court of equity may restrain the trustee from a misuse or abuse of the funds committed to his administration. There is sufficient definiteness when the general objects of the testator's bounty are pointed out. The reasons for such a requirement as to definiteness, as they are suggested in this opinion of the Supreme Court, are two, and I have found none other in any decision where charitable trusts are recognized, and I can conceive of no other. They are these: First, if the language creating the trust is not sufficiently definite to indicate that it is to be for charitable purposes, then it cannot be held to be a charitable trust at all and is subject to the laws governing private trusts; second, if the language creating the trust is not sufficiently definite as to the limits placed upon the discretion of the trustee as to enable a court of equity to restrain him within those limits, then his control over the property committed to his care is equivalent to that of a private owner.

The law as declared in Chambers et al. v. City of St. Louis has never been departed from in the judicial history of Missouri so far as the principles therein embodied are concerned, but has, on the other hand, often been reasserted. The last restatement of the same legal principles was in 1928, in St. Louis Union Trust Co. v. Little et al., 320 Mo. 1058, 10 S. W. (2d) 47, 50. I summarize a few of the intervening outstanding decisions reaffirming the doctrine of the Chambers Case.

In Howe v. Wilson, 91 Mo. 45, 3 S. W. 390, 60 Am. Rep. 226, the residue of an estate had been left by the testator to a named trustee with directions "to divide said remainder among such charitable institutions of the city of St. Louis, Mo., as he shall deem worthy." It was objected that the trust so attempted to be created was so vague and uncertain as to be void and incapable of enforcement. As to that objection, the court said:

"Coming, then, to the question in dispute in this case, two things are to be kept in view which render it unnecessary to examine a number of cases cited by the plaintiff. In the first place, the bequest is for charitable institutions. The testator must be taken to have used the word 'charitable' in its legal signification. No question, then, can arise as

to the character of the bequest. The trustee has no power to dispose of the fund for any purpose other than that strictly charitable. In the next place, there is a living trustee in whom the testator vested the power to divide the fund among such institutions as he should deem worthy. Though the institutions are not designated, yet the means of designating them is provided. * * * The question, then, is, with the bequest purely charitable, and a trustee with power to execute it, is it void for uncertainty? Mr. Perry says: 'There is a wide distinction between a gift to charity, and a gift to a trustee to be by him applied to charity; * * * in the second case, the court has jurisdiction over the trustee, as it has over all trustees, to see that he does not commit a breach of his trust, or apply the funds in bad faith, or, to purposes that are not charitable. * * *'

"In Chambers v. City of St. Louis, supra, the devise was: 'In trust to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way, bona fide, to settle in the west.' That devise was held valid, and sufficiently definite and certain, after an elaborate and thorough investigation of the subject. There, it is true, a class of persons was selected to receive aid from the fund. Here charitable institutions, within a limited and defined locality, are selected. We do not see that the difference affects the application of any principle upon which that case was decided. * * *

"It is essential to a charitable bequest that the objects to be benefited should be, to some extent, indefinite. * * * The foregoing examples [reference is to Saltonstall v. Sanders, 11 Allen (Mass.) 446, and Miller v. Teachout, 24 Ohio St. 525] will serve to show that if the general objects of the bequest are pointed out, or if the testator has fixed a means of doing so by the appointment of trustees with that power invested in them, then the gift must be treated as sufficiently definite for judicial cognizance, and will be carried into effect."[5]

In Powell v. Hatch, 100 Mo. 592, 14 S. W. 49, 50, the residue of an estate was left to a trustee for various purposes, including "such charitable purposes as my said trustee may deem best." It was objected that this language was too vague and indefinite as not to create a valid charitable trust. To that objection the Supreme Court said:

"The principles governing the execution of powers of appointment to charitable trusts have been so recently the subject of thorough consideration here that we do not feel ourselves called upon to enter on a further discussion of them now. The same rules of law that controlled the case of Howe v. Wilson, 91 Mo. 45, 3 S. W. 390 [60 Am. Rep. 226], govern the one at bar. The only difference of any consequence between the facts presented in the two cases is that in the earlier one the discretion was to be exercised among the 'charitable institutions of St. Louis,' while in the present no limitation with respect to locality appears. We do not regard this difference in the facts as affecting, in any wise, the application of the principles established in the former case."[6]

In Barkley et al. v. Donnelly, 112 Mo. 561, 19 S. W. 305, the residue of an estate was left to trustees for various purposes, including the erection of a home and place "for the maintenance and education of poor children." To this it was objected that it was too indefinite and uncertain to be enforced in equity. It was urged that the trustees

seems to me no distinction. It is said that the will in Howe v. Wilson authorized gifts only to existing institutions, whereas this will authorizes gifts for charitable purposes not only to existing institutions but to those which may hereafter come or be brought into existence. But the necessity of definiteness is that limits may be fixed within which equity can restrain the trustee whenever he undertakes to expend the fund for other than charitable purposes. Whenever the trustees under this will expend any part of the fund, it will be through institutions at that time existing so that the reason for the requirement as to definiteness will be satisfied as fully as if the institutions were in existence at the time the trust was created.

[6] Powell v. Hatch no more than Howe v. Wilson can be distinguished to the advantage of plaintiffs from the case here. The bequest there was to a trustee for charitable purposes with the whole world as a field for serving them. Here is for charitable purposes in Kansas City, a much more definite limitation. The discretion there in the trustee was absolute as to the selection of what charitable purposes should be aided. The absolute discretion of the trustees here is within the further limitation that the charitable purpose aided is "in the public interest." Plaintiffs have frankly conceded that so far as the issue of indefiniteness is concerned Powell v. Hatch, if it stood alone, would require the decision of this case against them. But Powell v. Hatch has never been either expressly (nor, as I think, impliedly) overruled or so much as questioned in any later decision. On the other hand, it has several times since its decision been cited with approval.

[5] Howe v. Wilson cannot well be distinguished from the present case. In the will there a trustee was named to distribute the fund. That is true here. In the will there the fund was to be distributed to "charitable institutions of the city of St. Louis." In the will here it is to be distributed "for charitable purposes in Kansas City." In the will there the fund was to be used for such charitable institutions as the trustee should "deem" (that is, in the exercise of his absolute discretion should determine to be) "worthy." In the will here it is to be used for such charitable purposes as the trustees shall determine to be "in the public interest." The plaintiffs have made two contentions as to this case: First, that it is impliedly overruled by later cases, and, second, that it is distinguishable. The distinction sought to be pointed out

would have authority to select "from the innumerable multitude upon the earth those that shall partake of the testatrix's 'bounty.'" That objection the Supreme Court held untenable upon the· authority of Chambers v. City of St. Louis, Howe v. Wilson, and Powell v. Hatch.

In Sappington et al. v: Sappington School Fund Trustees et al., 123 Mo. 32, 27 S. W. 356, a fund was left the trustees, the interest of which they were directed to apply "to such \* \* \* objects of charity in said [Saline] county as in the judgment of the trustees most needed it." To this it was objected that it was so vague and indefinite as to be void and unenforceable. As to that the court said, citing in support of its conclusion, among other cases, Chambers v. City of St. Louis and Howe v. Wilson:

"No doubt the gift mentioned is valid, the rule being that, in gifts to a charitable use, mere obscurity or indefiniteness will not necessarily defeat the trust; for courts of chancery will uphold and administer gifts where they are made to charity generally, if there is a trustee with power to make them definite and certain. 'Courts look with favor upon all such donations, and endeavor ·to carry them into effect, if it can be done consistently with the rules of law. If the words of a gift are ambiguous or contradictory, they are so construed as to support the charity, if possible. It is an established maxim of interpretation that the court is bound to carry the gift into effect, if it can see a general charitable intention consistent with the rules of law, even if the particular manner indicated by the donor is illegal or impracticable; or, as Lord Hardwicke said, "The bequest is not void, and there is no authority to construe it to be void, if by law it can possibly be made good;" or, in other words, "there is no authority to construe it to be void by law if it can possibly be made good."' \* \* \*

"Here there is a trustee with power to make the gift definite and certain, and power in a court of equity to see that the trustee does not commit a breach of his trust, and to compel its observance by him."[7]

In Buchanan et al. v. Kennard et al., 234 Mo. 117, 136 S. W. 415, 37 L. R. A. (N. S.)

993, Ann. Cas. 1912D, 50, money was left in trust to named trustees for the purpose, among other purposes, of furnishing a site for and erecting thereon a hospital "for sick and injured persons." To this it was primarily objected that it was not a charitable trust; ·secondarily, it was objected that it was so vague and indefinite as to be void and unenforceable. With respect to the second of these objections, the court said, citing and reaffirming the doctrine announced in Chambers v. City of St. Louis, that:

"It was not necessary that the bequest should have been more definite as to the selection of the objects of the public charity, or for administering and carrying out the purposes of the gift, than it was made in this provision of the will."

In Sandusky v. Sandusky, 261 Mo. 351, 168 S. W. 1150, 1151, money was left in trust to a named trustee for certain purposes and also "for the 'general advancement of Christianity.'"' It was objected that this was so vague and indefinite as to be void and unenforceable. The objection was shortly disposed of by the Supreme Court as follows:

"The provision for the 'general advancement of Christianity' does not avoid the bequest. A trustee is provided for who shall determine the particulars as to the application of the fund. 'Id certum est quod certum reddi potest.' Howe v. Wilson, 91 Mo. 45, 3 S. W. 390, 60 Am. Rep. 226."

In· St. Louis Union Trust Co. v. Little, supra, decided in 1928, the bequest was made to a named trustee "to be spent on the welfare of poor, homeless children." To this it was objected that it was so vague and indefinite as to be void and unenforceable. The objection was held untenable by the Supreme Court. Once more the court cited and affirmed the doctrine of Chambers v. City of St. Louis and the later cases of Howe v. Wilson, Powell v. Hatch and Barkley v. Donnelly.

It appears then that continuously since 1860 and at least as late as 1928 the Supreme Court of Missouri has adhered to the doctrine which it first announced with respect to charitable trusts and as to the requirement of definiteness in such trusts, to wit, that if the objects of the charity are stated generally and a trustee is named to administer the trust within the general limits prescribed in the instrument creating it, then it is not void for vagueness and indefiniteness, since then it is sufficiently definite that equity can prevent an abuse of the trust by holding the trustee to the general objects stated.

---

[7] It is suggested by plaintiffs that this language quoted from the Sappington Case is only dictum, but that is incorrect. The Supreme Court based its judgment affirming the decree below on two rulings, one of which was that the attempted trust was not void for vagueness and indefiniteness. Either ruling was sufficient to sustain the result reached and neither was necessary to that result, but each was relevant to the issues raised. In no sense was the quoted language, therefore, mere dictum.

There are, however, certain Missouri decisions upon which the plaintiffs in this case put their reliance which must be considered and discussed. My view is that none of them states the law of Missouri to be other than it is stated in Chambers v. City of St. Louis and cases following that, although some of them may have applied the recognized principles to particular facts so as to reach results not easily reconcilable with the results reached in the majority of cases. The cases chiefly relied on are Schmucker's Estate v. Reel, 61 Mo. 592; Board of Trustees v. May, 201 Mo. 360, 99 S. W. 1093; Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59, 60, 14 L. R. A. (N. S.) 49; Jones v. Patterson, 271 Mo. 1, 195 S. W. 1004, L. R. A. 1917F, 660; and Wentura v. Kinnerk, 319 Mo. 1068, 5 S.W. (2d) 66.

In the case of Schmucker's Estate v. Reel, supra, the bequest involved was in the following language:

"The balance of my property of every description, I give, devise and bequeath to John H. Reel, to apply in charity, according to his best discretion, and I appoint said John H. Reel executor of this, my will. * * * And whereas I hope, that Mr. Reel aforenamed will consent to act as my executor, and desire to save him all trouble and annoyance in that regard, and have every confidence [in his], good faith and discretion, and have explained to him to what charities I desire him to appropriate the monies herein bequeathed to him, it is my will that my said executor be held to no accountability whatever for the non-performance * * * of the trust herein confided to him; he will use his best discretion in the matter, and the receipt of the acting Archbishop of St. Louis of the Roman Catholic church in Missouri or Kansas, shall be a full discharge to him pro tanto for any monies applied by him to charities according to my request."

The court held that by this language the testator attempted to create a charitable trust, but that the attempt was abortive for the reason that the trust attempted to be created was so vaguely and indefinitely described as that it could not be enforced by a court of equity. The exact language of the court in disposing of this matter was as follows:

"The residuum is then devised and bequeathed to the executor to apply in charity, according to his best discretion; but this is immediately explained in the succeeding clause, in which the testator says that he has every confidence in the good faith and discretion of the executor, and that he has explained to him in what charities he desired him to appropriate the moneys. * * *

"There is no mistaking the purport of this language. It all goes to show that the executor took bequests clothed with a trust to carry out certain objects or purposes not defined or expressed in the will. * * *

"In every will creating legacies or trusts, there should be such certainty as will enable the court to carry them out. Where such uncertainty exists that the court cannot see what object the testator had in view, or for what he intended to provide, then the legacy or trust must fail."

This case is cited by the plaintiffs here as holding that a bequest to a trustee of an amount to be applied by him "in charity according to his best discretion" is so vague and indefinite as to be unenforceable. It seems to me quite clear that the case does not so decide nor even so suggest. On the contrary, it does suggest that a bequest to a trustee to be applied "in charity according to his best discretion" would not be invalid. Attention is by the court sharply called to the fact that the language to be "applied in charity according to his best discretion" is "immediately explained" and limited by secret instructions given to the trustee and not embodied in this will. The trust was held to be indefinite, not because of any indefiniteness in the language "to be applied in charity according to his best discretion," but because other conditions were imposed upon the trustee which were not at all set out and within which, therefore, no court of equity could restrain the trustee in his disposition of the fund committed to him. That this is all that was intended by the court is clearly indicated by the cases which it cites, every one of which is a case of a trust to be expended subject to conditions referred to in the will, but not stated in it.

In Hadley v. Forsee, supra, an attempted trust was sought to be created in this language: "The balance of my said property will be given to advance the cause of religion, and promote the cause of charity, in such manner as my dearly beloved wife may think will be most conducive to the carrying out of my wishes." It was objected that this language was so vague and indefinite as to be void and incapable of enforcement. It was held that the language was ineffectual to create a charitable trust, but it was so held, not as a departure from the doctrine of Chambers v. City of St. Louis, Howe v. Wilson, Powell v. Hatch, Barkley v. Donnelly,

and Sappington v. Trustees, all of which were cited with approval, but, in full accordance with the principles of law declared in those cases, because a court of equity could not enforce the trust. The attempted trust was not merely for the advancement generally of the cause of religion and for the promotion generally of the cause of charity, but was intended, the court held, for the advancement of some particular religion and the promotion of some particular charity, neither being named. That appeared from the fact that reference was made in the language used as to the testator's wishes as known to his dearly beloved wife. She was dead. There was no way of ascertaining, therefore, what religion the testator had in mind and what charity he wished to have promoted. Moreover, no trustee was named who could select particular objects of the trust within the general scope set out in the instrument. The court said:

"The testator was not willing to put his property in a condition that a chancellor might give it to the advancement of any religious order he might select or any charity he might prefer. He trusted that matter to his wife alone, and, as she is now dead, no one can ever know what his wishes in that respect were."

The clear intimation is that had the will in this case left a fund to a named trustee for the purpose of advancing generally the causes of religion and charity, it would have been good. If the decision is so construed, then it is in harmony with those already cited and lends no support to the narrow construction of the law of charitable trusts which plaintiffs urge.

The case of Jones v. Patterson, supra, is plaintiff's chief reliance. The will discussed in that case left a fund to a named trustee "to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls." It was objected that this language was so vague and indefinite as to be void and unenforceable and it was so held by the court. There was not, however, as I read the case, any departure from the principles of law generally followed in this state and announced in the cases to which I have above made reference. The court said:

"An essential requisite to the validity of such a trust as is here under consideration is that it be clear, definite and certain; by which is meant that the words of creation announce a definite subject and a certain object and that the terms of the trust be sufficiently

declared. * * * By this sufficiency of declaration is meant the use of such words as will enable a court of equity to enforce the performance of the duty imposed on the trustee.

"The reason for this limitation was clearly expressed by the English High Court of Chancery in the beginning of the last century in the case of Morice v. Bishop of Durham, 9 Vesey, Jr. 1. c. 405, where the Master of the Rolls, speaking for the court, said: 'There can be no trust over the exercise of which the court will not assume control, for an uncontrollable power of disposition would be ownership and not trust.'

"The fact that the interest may be generally expressed will not necessarily cause the trust to fail on account of the uncertainty of the object * * * if the particular mode of application may be rendered susceptible of direction by a court of equity. * * * Notwithstanding the permissibility of a general declaration, if the charity does not by its own terms fix itself on a well defined object or is not susceptible of such interpretation by the courts but is general and indefinite, it must fail."

It will be seen from the quoted excerpt that there is no departure here from the general principles stated in Chambers v. City of St. Louis, in Howe v. Wilson, in Powell v. Hatch, in Sappington et al. v. Sappington School Fund Trustees, and other cases. The definiteness required in the language used in the attempted creation of a charitable trust must be such as that a court of equity may control the trust and so that the trustee will not have such "an uncontrollable power of disposition" as "would be ownership and not trust."

It was in the application of these principles to the facts that the court departed from the general Missouri law. First construing the words of the instrument as being the equivalent of a provision that the fund left to the trustee should be used for the propagation of the Christian religion, the court then held that "the scope of the field in which the trustee is intended to exercise this charity is as unlimited as human thought" and that he might "not inappropriately be classified as the owner of the property rather than one charged with the execution of a trust." And it must be conceded that if the instrument was susceptible of any such construction, then the conclusion which the court reached was right and entirely consistent with the established law as to definiteness in the creation of a charitable trust.

One may accept and follow the principles of law recognized in this case without agreeing to the interpretation which the court placed on the particular instrument before it. It is the law of the case with which we are concerned. We are not so much concerned with whether it may have been misapplied. It is interesting to note that in a later decision of the Supreme Court of Missouri, Harger et al. v. Barrett et al., 319 Mo. 633, 5 S. W. (2d) 1100, in which the opinion was written by the same judge who was the author of the opinion in Jones v. Patterson, that judge cited and commented on the case of Sandusky v. Sandusky, 261 Mo. 351, 168 S. W. 1150, 1151, and called attention with approval to its decision that a gift to a trustee "for the 'general advancement of Christianity'" was valid, an indication that even he could not adhere to what must seem to be a misapplication of true principles to facts in Jones v. Patterson. It should be further said that while the case of Jones v. Patterson has since been cited on one or two occasions by the Supreme Court of Missouri, it has never been suggested that it evidenced any departure in principle from the doctrines of the earlier and later cases.

Still another case cited by the plaintiffs is Board of Trustees v. May, 201 Mo. 360, 99 S. W. 1093, 1094. In that case the residue of an estate was given "to the Methodist E. Church, South, and missionary cause." It was held that the language, "missionary cause," was so vague and indefinite as that no charitable trust was created. No trustee was named. It was strongly intimated that if there had been a trustee named, then the attempted trust would not have been invalid. Thus the court said:

"Had she [the testatrix] said 'to the Methodist E. Church, South, for missionary cause,' there would be less trouble, for in that instance we would have a trustee named in the will and an indication of how that trustee should apply and use the fund."

Later decisions of the Supreme Court of Missouri referring to and interpreting this case have indicated that had the suggested language been employed, the trust would have been valid. Thus in St. Louis, etc., v. Little, supra, the court said, speaking of this case, that the opinion there "intimates that, if the will had said 'to the Methodist E. Church, South, for missionary cause,' the bequest would have been valid."

There remains to be discussed the case of Wentura v. Kinnerk, 319 Mo. 1068, 5 S. W. (2d) 66, decided April 11, 1928, which involved a will giving the residue of an estate to "such charitable uses and purposes as he (the executor) may determine." In the course of the opinion it was said of this provision: "There can be no doubt but that the bequest to charity is void." Schmucker's Estate v. Reel and Jones v. Patterson were cited. The quoted language does, as plaintiffs here contend, conflict with those earlier decisions of the Supreme Court of Missouri, Howe v. Wilson, Powell v. Hatch, Sandusky v. Sandusky, and others, all of which in St. Louis, etc., v. Little, three months after the decision in Wentura v. Kinnerk, expressly were approved by the same division of the Supreme Court of Missouri. It is perfectly apparent, however, from a study of the Wentura Case, that the quoted language was merely dictum and in no sense declaratory of the Missouri law as to charitable trusts. It appears from the briefs submitted in that case as those briefs are abstracted in the official report that all the parties in the case were solicitous that the will under consideration should not be held to have created a valid charitable trust. No one having any interest in maintaining that the attempted trust was valid was heard. The Attorney General was not a party. Not one of the numerous cases that would have supported the attempted trust was either cited by counsel or the court.

The case was a statutory will contest. One Arrena R. Pierron had executed two wills, the first on August 11, 1923, the second on August 12, 1923. In the second will William A. Kinnerk had been named executor, and it was in this second will that the provision giving the residue of the estate "to such charitable uses and purposes as he (the executor) may determine" appeared. The controversy, so far as it is essential to describe it here, was between the beneficiary in the first will and the executor in the second. The beneficiary in the first will contended that the second was obtained by fraud, undue influence, and coercion, and was therefore void. The issue was, will or no will. The judgment of the trial court established the validity of the second will. One of the assignments of error on which the case went up was that the trial court erred in directing the jury to find the second will to be the last will of the testator. If there was no evidence tending to establish that the last will had been obtained by fraud, etc., then it was not error to direct the verdict. The contention was that the language quoted from the will by which the residue was left "to such charitable uses and purposes," etc., was itself evidence

of fraud on the part of Kinnerk who drew the will, since, as it was contended, the language used was so vague and indefinite as not to create a valid trust and had the effect of bestowing the property on the executor.

The question then for decision by the Supreme Court was as to whether the language used would have the effect of bestowing the residue of the property on the executor. The court held that it would not have such an effect, inasmuch as where a trust is intended, although imperfectly declared, the property does not go to the trustee but reverts to the heirs. No more than that was necessary to be decided to determine that the language used was no evidence of fraud on the part of Kinnerk. The language of the court to the effect that no charitable trust was created was entirely unnecessary to and wholly beyond the decision of the question involved. It was dictum. As dictum it cannot be said to indicate the Missouri law on the subject of charitable trusts.

I have reviewed the more important decisions of the Supreme Court of Missouri bearing upon the question here considered. From those decisions the conclusion is inescapable that a bequest to named trustees to be expended for charitable purposes in the public interest in Kansas City is not void and unenforceable for vagueness and indefiniteness. It is entirely unnecessary to consider the law in other jurisdictions, either in the United States or generally in English speaking countries, although counsel on both sides with amazing diligence and exhaustive research have put before me numerous decisions by other than Missouri courts, amplified and discussed by them in briefs encyclopedic in character and further elucidated by five days of oral argument.

Upon the whole case my conclusions are that the will here creates a trust for purposes exclusively "charitable" within the technical meaning of that term, and that its general objects are stated with all the definiteness required by Missouri law. The bill should be dismissed. An appropriate decree may be prepared and submitted for approval and entry.